[S.F. No. 24910. Aug. 4, 1986.]

GENERAL FOUNDRY SERVICE et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD,
WILLIAM EDWIN JACKSON et al., Respondents.

**COUNSEL**

Sedgwick, Detert, Moran & Arnold, Thomas G. Rajspic, C. Gordon Taylor, Laughlin, Falbo, Levy & Moresi and Michael W. Laughlin for Petitioners.

Samuel E. Meredith and Goshkin, Pollatsek, Meredith & Lee as Amici Curiae on behalf of Petitioners.

Steve Kazan, Victoria L. Edises and Bryce C. Anderson for Respondents.

James E. Miller and McCarthy, Johnson & Miller as Amici Curiae on behalf of Respondents.

OPINION

REYNOSO, J.—Exposure to asbestos in the workplace may cause cancer in a worker after a latency period of 20 to 40 years. The Labor Code contains a five-year statutory limitation on the Workers' Compensation Appeals Board's (Board) jurisdiction once a date of injury is established for a permanent disability. Thus, if a permanent disability rating takes place too early, an employee with a progressive lung disease such as asbestosis faces the risk of being precluded by the statute of limitations from seeking full compensation for his industrial injury.

A worker's compensation judge initially rated petitioner William Edwin Jackson at 214 percent permanent disability. However, the Board would not rate Jackson's lung disease as a permanent disability since medical reports unanimously agreed that his condition would continue to worsen. Instead, the Board awarded him temporary total disability payments to continue indefinitely. The Court of Appeal annulled the decision. Even though Jackson's health would continue to worsen, the Court of Appeal reasoned that his progressive disease should be considered permanent for rating purposes when the prognosis of his disease is sufficiently ascertainable to make a rating determination.

We reverse. The Board, we conclude, may tentatively rate the permanent disability of an employee with a progressive disease, and order advances based on that tentative rating. It may then reserve its jurisdiction for a final determination of permanent disability when the employee's condition is permanent and stationary, or when the employee's permanent disability is total (100 percent) and further deterioration would be irrelevant for rating purposes.

I.

Jackson worked as a molder for General Foundry Service (General) for 29 years from 1952 to 1981. During that period, exposure to asbestos and

silica dust caused him to develop a progressive lung disease. Jackson stopped working in 1981 upon his doctor's advice that he avoid further exposure to dust. General has not provided Jackson with work within his capabilities and he remains unemployed.

In his initial award, the workers' compensation judge found that Jackson's lung disease was caused at least in part by exposure at work and that the disease was progressive and not yet stationary. The judge ruled that Jackson had no temporary disability. While it was too early to rate a permanent disability, the judge concluded that Jackson was entitled to an advance of 214 percent permanent disability. On petition for reconsideration, however, the judge decided that Jackson's disease was not stationary for a permanent disability rating. He concluded that Jackson should receive temporary total disability from the date he left his job.

The Board agreed with the judge's ruling on the petition for reconsideration, concluding that Jackson was temporarily disabled as of April 18, 1981, his last work day. It stated: ". . . owing to progression of his medical condition and the environment in which he worked, he is no longer able to perform his old job and his employer has not made work within his capabilities available to him. Thus, he has suffered wage loss, yet his condition is not stationary so that it can be rated. Under these circumstances, . . . he is entitled to temporary disability indemnity until such time as his condition becomes stationary." Accordingly, the Board ordered temporary total disability payments to continue indefinitely.

The Court of Appeal annulled the Board's decision. The court determined that a progressive disease need not be stationary for a permanent disability rating. Instead, the Board should consider a progressive disease permanent when either: (1) "the disability is total and further deterioration would be irrelevant for rating purposes," or (2) "the prognosis of the disease is sufficiently ascertainable to make a rating determination." Thus, the court remanded the case to the Board to determine if Jackson came within either of these categories.

## II.

A. *Reservation of Jurisdiction on the Issue of Permanent Disability for an Employee With a Progressive Disease*

The Labor Code does not define the term "permanent disability." However, the applicable administrative rule states: "A disability is considered permanent after the employee has reached maximum improvement or

his condition has been stationary for a reasonable period of time." (Cal. Admin. Code, tit. 8, § 9735.) This definition is inadequate, however, when applied to a progressive occupational disease. "The reference to 'maximum improvement' obviously refers to the more classical concept of 'injury' which envisions a traumatic incident resulting in corporal injury with a period of healing to a point of greatest improvement. The term did not envision an insidious, progressive disease process that results from a remote, undramatic work exposure and is of little or no use in determining the status of such a condition . . . . The Board rule for permanent disability, therefore, is not very helpful . . . except to suggest that the condition is not permanent and stationary because of its progressive nature." (*Piedemonte* v. *Western Asbestos* (1981) 46 Cal.Comp.Cases 475, 478.) Given this inadequate definition, the Board in this case relied on the following standard: " 'a disability is generally regarded as "permanent" where further change— for better or worse—is not reasonably to be anticipated under usual medical standards.' " (*Sweeney* v. *Industrial Acc. Com.* (1951) 107 Cal.App.2d 155, 159 [236 P.2d 651], quoting 1 Campbell, Workmen's Compensation (1935) § 813, p. 719.) Since Jackson's condition was likely to deteriorate, the Board concluded that his disability was not permanent.

The Court of Appeal also recognized that the Board's administrative definition of permanent disability did not adequately address the issue of rating a progressive disease. However, the court then determined that a progressive disease need not be stationary for a permanent disability rating. Instead, the Board should rate a progressive disease (such as Jackson's) as a permanent disability when the prognosis is "sufficiently ascertainable to make a rating determination." The Board could rate a progressive disease by " 'peering into the future and determining so far as possible the reasonable probabilities . . . . [as] courts and juries do every day in personal injury actions.' " (Quoting *Dahlbeck* v. *Industrial Acc. Com.* (1955) 135 Cal.App.2d 394, 400-401 [287 P.2d 353].)

■ This approach suffers from two fundamental flaws. First, if the Board makes a permanent disability rating too early, the employee faces the risk that the five-year statute of limitations will preclude him from seeking full compensation once his disease is stationary or he has reached 100 percent disability. (Lab. Code, §§ 5410, 5804.)[1] This risk is especially grave considering the long latency period of diseases arising from exposure to asbestos in the workplace.[2]

---

[1]All further statutory references are to the Labor Code unless otherwise indicated.

[2]"The medical standards concerning asbestos disease have developed along with the growing awareness and accumulating knowledge of this insidious and progressive condition. 'As-

Second, the court's suggestion for the rating of the future path of a progressive disease is not practical under the present ratings procedure for permanent disability in the California workers' compensation system. The present system rates permanent disability based on an evaluation of the employee's condition as it exists at the time of the rating according to schedules established by the Division of Industrial Accidents. (§ 4660, subds. (a) and (b); see generally, Swezey, Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) § 16.) Both parties agree that it would be unworkable to factor into this rating the unknown future progress of an occupational disease, including such speculative factors as whether lung cancer or mesothelioma might develop.[3]

Both parties suggest that a practical solution to the problem posed by insidious, progressive diseases would be to allow the Board to reserve jurisdiction to make its final determination on an applicant's permanent disability once the disease is permanent and stationary. (See, e.g., *Los Angeles Unified School District* v. *Workers' Comp. Appeals Bd. (Rainey)* (1985) 50 Cal.Comp.Cases 285; *Los Angeles Unified School District* v. *Workers' Comp. Appeals Bd. (Anicich)* (1983) 48 Cal.Comp.Cases 880; *Piedemonte* v. *Western Asbestos, supra,* 46 Cal.Comp.Cases 475.) This approach appears to have merit.

The Legislature has mandated that courts liberally construe the Workers' Compensation Act "with the purpose of extending [its] benefits for the

---

bestos' is the generic name given to a group of hydrated silicate minerals that can be separated into relatively soft, silky fibers which have great tensile strength, the quality that makes it as useful in industry as it is harmful to soft internal human tissue. Use of this material in occupational settings has become widespread because of its physical properties which make it ideal for a myriad of uses, primarily as a fireproofing and insulating material. The widespread industrial exposure has led to the recognition in the medical community of a number of asbestos-related diseases including parenchymal asbestosis, pleural asbestosis, pulmonary carcinoma and mesothelioma. The latter is a disease of the mesothelial surface lining (i.e. chest and stomach lining) described by one authority as follows:

" '. . . it is a diffuse malignancy which spreads across the serous surfaces. Medical studies disagree whether pleural or peritoneal mesothelioma is more prevalent among asbestos workers. Although increasing dyspnea may be the presenting symptom, the onset of pleural mesothelioma is insidious and progressive. The same is true of peritoneal mesothelioma except that weight loss is an early symptom.

" 'Asbestos is generally acknowledged to be the major cause of mesothelioma but there is doubt whether it is the sole cause. Unfortunately, the dose required to produce a malignancy is comparatively trivial and, because of the 25– 40-year latency period, the exposure is sometimes overlooked in an occupational history.' Christopher C. Mansfield, *Asbestos: The Cases And The Insurance Problem* (summer 1980) the Forum, American Bar Association, page 864." (*Piedemonte* v. *Western Asbestos, supra,* 46 Cal.Comp.Cases at p. 479.)

[3]The California Workers' Compensation Institute filed an amicus curiae brief on behalf of General, while the California Applicants' Attorneys Association filed an amicus brief in support of Jackson. This opinion will treat assertions on behalf of either party by amicus as if they had been made by the parties themselves.

protection of persons injured in the course of their employment." (§ 3202.) Accordingly, we have held that the statute of limitations in workers' compensation cases "must be liberally construed in favor of the employee unless otherwise compelled by the language of the statute, and such enactments should not be interpreted in a manner which will result in a right being lost before it accrues." (*Fruehauf Corp.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569, 577 [68 Cal.Rptr. 164, 440 P.2d 236]; accord, *Subsequent Injuries Fund* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 56, 65 [84 Cal.Rptr. 140, 465 P.2d 28].) With this principle of liberal construction in mind, we approach the issue of the Board's reservation of jurisdiction.

The Board clearly has the power to continue its jurisdiction beyond the five-year period when an application is made within that period. (*Gobel* v. *Industrial Acc. Com.* (1934) 1 Cal.2d 100, 103-104 [33 P.2d 413].) Furthermore, when the Board fails to find on the issue of permanent disability presented by a timely filed application, the applicant may apply for an award after the statutory period has expired. (*Douglas Aircraft Co.* v. *Ind. Acc. Com.* (1948) 31 Cal.2d 853, 855-856 [193 P.2d 468]; see also *Lockheed Aircraft Corp.* v. *Industrial Acc. Com.* (1960) 183 Cal.App.2d 361, 365 [6 Cal.Rptr. 409].) Finally, the Board may reserve jurisdiction on the issue of permanent disability when an employee's condition is not stationary and then determine the issue after the statutory period. (*Westvaco etc. Corp.* v. *Ind. Acc. Com.* (1955) 136 Cal.App.2d 60, 68 [288 P.2d 330].)

The Board has considered the issue of a reservation of jurisdiction in a number of cases involving progressive diseases. In *Piedemonte* v. *Western Asbestos, supra,* 46 Cal.Comp.Cases 475, the employee's progressive disease had not yet resulted in disability. The Board modified the workers' compensation judge's finding that the applicant had no permanent disability, ruling instead that the applicant's condition was not yet permanent and stationary for rating purposes. The Board concluded that the five-year statutory limitation of section 5804 would not apply because the issue of permanent disability remained "unresolved" and there was no decision to be altered or amended. (*Id.,* at pp. 482-483; cf. *J.T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 337, 340 [200 Cal.Rptr. 219] [Board has no duty to find a "date of injury" under section 5412 when employee with a progressive disease does not suffer an impairment of his earning capacity].)

Similarly, the Board has awarded permanent disability to an employee with a progressive disease and expressly reserved jurisdiction to modify the permanent disability award if the employee's disability increased in the future. (*Los Angeles Unified School Dist.* v. *Workers' Comp. Appeals Bd.*

*(Anicich), supra,* 48 Cal.Comp.Cases at p. 881.) Finally, the Board has deferred a finding on the issue of permanent disability, made a tentative finding of permanent disability and ordered an award of advances based on that level of permanent disability. *(Los Angeles Unified School Dist.* v. *Workers' Comp. Appeals Bd. (Rainey), supra,* 50 Cal.Comp.Cases at p. 286.)

We conclude that the Board's reservation of jurisdiction on the issue of permanent disability in the case of insidious, progressive diseases serves to further the compensatory goals of the workers' compensation system. On remand, the Board may tentatively rate Jackson's known permanent disability and order advances based on that tentative rating. It may then reserve its jurisdiction for a final determination of permanent disability when either: (1) his condition becomes permanent and stationary, or (2) his permanent disability is total (100 percent) and further deterioration would be irrelevant for rating purposes.[4]

Before the Board makes a determination on the issue of Jackson's permanent disability, however, it should consider his potential eligibility for rehabilitation benefits. *(Leboeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 242-243 [193 Cal.Rptr. 547, 666 P.2d 989]; *Webb* v. *Workers' Comp. Appeals Bd.* (1980) 28 Cal.3d 621, 627 [170 Cal.Rptr. 32, 620 P.2d 618].) Therefore, we address the propriety of the Board's award of temporary total disability to Jackson.

## B. *Rehabilitation of Employees With Progressive Diseases*

The Board found that Jackson was not able to return to his former job at General due to the progression of his medical condition and the environment in which he had worked. Moreover, General had not made work within his

---

[4]Employers and insurance carriers, of course, have "no absolute right to delay the provision of benefits until a formal hearing." *(Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200].) "[T]he only satisfactory excuse for delay in payment of disability benefits, whether prior to or subsequent to an award, is genuine doubt from a medical or legal standpoint as to liability for benefits, and . . . the burden is on the employer or his carrier to present substantial evidence on which a finding of such doubt may be based." *(Id.,* at p. 230.) An unreasonable delay in payment of compensation will result in the assessment of a 10 percent penalty on the full amount of the award. (§ 5814.)

Due to the uncertain progression of Jackson's occupational disease, we recognize that it may be necessary for the Board to rate his known permanent disability in stages at several subsequent proceedings. If the Board determines at the conclusion of each proceeding that Jackson's condition is not either (1) permanent and stationary or (2) a total (100 percent) permanent disability, it may continue to reserve its jurisdiction for a future final determination of permanent disability.

capability available to him. Therefore, Jackson had suffered a wage loss, yet his condition was not stationary so that it could be rated for a permanent disability. Applying the "odd lot" doctrine,[5] the Board determined that Jackson was entitled to temporary total disability until his condition became stationary.

On appeal, General claims that an award of life-long temporary disability is inconsistent with the usual application of temporary disability payments to compensate for wage loss during a healing period. (*W.M. Lyles Co.* v. *Workmen's Comp. App. Bd.* (1969) 3 Cal.App.3d 132, 136 [82 Cal.Rptr. 891]; see also *Huston* v. *Workers' Comp. Appeals Bd.*, *supra*, 95 Cal.App.3d at p. 868.) Moreover, the workers' compensation judge initially rated Jackson at 214 percent permanent disability, indicating that Jackson is still able to work. General argues that the Board's decision changed this permanent partial disability into indefinite temporary total disability, which is tantamount to an award of 100 percent permanent disability. According to General, such an award eliminates any incentive an employee might have to return to work.

Jackson counters that his physical impairment precludes him from returning to the dusty environment of his former employment and from heavy physical labor. In addition, he emphasizes that General did not demonstrate that he was capable of obtaining any other work within his capabilities. Under these circumstances, he argues that application of the odd lot doctrine to an employee with a permanent partial disability will encourage the employer to offer vocational rehabilitation to its employees.

We share Jackson's concern that his permanent disability rating accurately reflect his diminished ability "to compete in an open labor market." (§ 4660.) In fact, we have noted the Legislature's intent that an injury should not be deemed permanent and stationary until an employee is both medically and vocationally rehabilitated. (*Webb* v. *Workers' Comp. Appeals Bd.*, *supra*, 28 Cal.3d at p. 627, quoting *Ponce De Leon* v. *Glaser Brothers* (1977) 42 Cal.Comp.Cases 962, 968.) Rather than applying the odd lot doctrine

---

[5]Temporary disability is rated as total or partial depending on the employee's ability to work during a period of convalescence. (*Huston* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 866, fns. 14, 15 [157 Cal.Rptr. 355].) Under the "odd lot" doctrine, a worker who is only partially disabled may receive temporary total disability payments if his partial disability results in a total loss of wages. (*Pacific Employers Ins. Co.* v. *Industrial Acc. Com.* (1959) 52 Cal.2d 417, 421 [340 P.2d 622].) This doctrine places the burden on the employer to show that work within the capabilities of the partially disabled employee is available. If the employer does not make this showing, the employee is entitled to temporary total disability benefits. (*Id.*, at p. 422; *Transport Indem. Co.* v. *Ind. Acc. Com.* (1958) 157 Cal.App.2d 542, 546 [321 P.2d 21].)

here, however, the Board should rely on the provisions of California's vocational rehabilitation program. (§ 139.5.)

An employee has a statutory "right to rehabilitation and a right to continued payment of temporary disability benefits from the moment of his choice to undergo rehabilitation." (*Webb, supra,* at p. 628; § 139.5.)[6] The employer has the primary duty for making rehabilitation available, which includes the duty to inform the injured employee of his potential right to rehabilitation. (Cal. Admin. Code, tit. 8, §§ 10004, 10005.) If the employer breaches its duty of notifying the employee, the employer is obligated to pay temporary rehabilitation benefits from the date of its breach. (*Webb, supra,* at pp. 630-631; Cal. Admin. Code, tit. 8, § 10016.)

As we pointed out in *Leboeuf* v. *Workers' Comp. Appeals Bd., supra,* 34 Cal.3d at page 242: "The statutory scheme envisions that vocational rehabilitation will be provided an injured worker *before* a final decision is reached on the nature and extent of his or her permanent disability." (Original italics.) Since in most cases rehabilitation benefits will significantly affect an injured employee's ability to compete in the open labor market, the employee's permanent disability rating will reflect this fact. Conversely, if an injured employee is not qualified for rehabilitation, this should also be taken into account in assessing a permanent disability rating. (*Id.,* at p. 243.)

Vocational rehabilitation may be particularly effective in the case of an employee such as Jackson who is partially disabled with a progressive disease. While Jackson's health precludes him from returning to his former job, his physical condition may still allow him to pursue another occupation. If the rehabilitation unit determines that Jackson is a qualified injured worker under section 139.5, General would have the duty to develop a rehabilitation plan for him so that he may return "as soon as practicable . . . to maximum self-support . . . ." (Cal. Admin. Code, tit. 8, § 10003, subd. (h).) If

---

[6]Section 139.5 provides that a "qualified injured worker" may receive rehabilitation benefits. The Administrative Code defines a qualified injured worker as an employee: "(1) The effects of whose injury, whether or not combined with the effects of a prior injury or disability, if any, permanently preclude, or are likely to preclude the employee from engaging in his or her usual and customary occupation or the position in which he or she was engaged at the time of injury; and (2) Who can reasonably be expected to return to suitable gainful employment through the provision of vocational rehabilitation services." (Cal. Admin. Code, tit. 8, § 10003, subd. (c).) However, we observe that an employee should receive vocational rehabilitation benefits during the evaluation period despite an ultimate determination that he or she is not a qualified injured worker *if* "the worker in good faith provides prima facie evidence to support a request for rehabilitation benefits." (*Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 639-640 [211 Cal.Rptr. 683].)

Jackson is not eligible for vocational rehabilitation, the Board should take that fact into account in determining his permanent disability rating.

We reverse the judgment of the Court of Appeal with directions to annul the Board's decision, and to remand this case to the Board for further proceedings consistent with this opinion.

Bird, C. J., Mosk, J., Broussard, J., Grodin, J., Lucas, J., and Panelli, J., concurred.