[No. S013121. Aug. 30, 1991.]

DIETER NICKELSBERG, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and LOS ANGELES
UNIFIED SCHOOL DISTRICT, Respondents.

COUNSEL

William A. Herreras and John W. Messer for Petitioner.

Rucka, O'Boyle, Lombardo & McKenna and N. Michael Rucka as Amici Curiae on behalf of Petitioner.

Kegel, Tobin, Hamrick & Truce, Robert W. Gilpin and Michael A. Ingler for Respondents.

Haworth, Bradshaw & Chaney and C. Gordon Taylor as Amici Curiae on behalf of Respondents.

OPINION

**PANELLI, J.**—We granted review to determine whether a workers' compensation judge had jurisdiction to award petitioner Dieter Nickelsberg (Nickelsberg) temporary total disability indemnity more than five years after the date of his original injury. We conclude, as did the Workers' Compensation Appeals Board (WCAB) and the Court of Appeal, that the workers' compensation judge lacked jurisdiction to award temporary total disability indemnity to Nickelsberg.

FACTS

Nickelsberg, a truck driver for the Los Angeles Unified School District, suffered industrial injuries to his back and legs in 1976 and again in 1979. Nickelsberg stipulated with the school district and with the State Compensation Insurance Fund that his injuries had resulted in temporary disability from January 6, 1979, through June 8, 1981, and in permanent disability of 66¾ percent. The parties also stipulated that Nickelsberg might need further medical treatment to cure or to relieve the injuries' effects. Pursuant to the stipulation, a workers' compensation judge awarded Nickelsberg indemnity for temporary and permanent disability and further medical treatment on February 2, 1983.

Nickelsberg underwent back surgery in July 1987. Pursuant to the original award, the school district paid for Nickelsberg's medical treatment. He was again temporarily, totally disabled from March 7, 1987, to November 25, 1987.

On February 8, 1988, more than nine years from the date of his 1979 injury, Nickelsberg filed a petition to reopen his original award. He claimed that he had suffered a "new and further disability" as defined in Labor Code section 5410. He also claimed that, because the new period of disability was caused by medical treatment provided pursuant to his existing award, he was entitled to recover further temporary total disability indemnity under Labor Code section 4656,[1] as amended in 1978 (see § 4656, as amended by Stats. 1978, ch. 937, § 1, p. 2913). In opposition to Nickelsberg's claim, the school district contended that an additional award would be barred by the time and jurisdictional limitations of sections 5804 and 5410.

Accepting Nickelsberg's argument, the workers' compensation judge awarded further temporary total disability indemnity on November 10, 1988, and the school district sought reconsideration by the WCAB. The WCAB determined that the school district's petition was untimely. However, because the WCAB determined that the workers' compensation judge erred in granting Nickelsberg further temporary total disability, it decided to grant reconsideration on its own motion. (§ 5900, subd. (b).)

The WCAB rescinded the award. The WCAB determined that "an award of further medical treatment does not implicitly carry with it a commensurate award of temporary total disability." On that basis, the WCAB concluded that Nickelsberg's petition to reopen was barred by section 5804 and that the workers' compensation judge therefore lacked jurisdiction to award further temporary total disability indemnity. The Court of Appeal affirmed.

DISCUSSION[2]

Former section 4656 provided that "[a]ggregate disability payments for a single injury causing temporary disability shall not extend for more than 240 compensable weeks within a period of five years from the date of the injury."

Section 4656 was amended in 1978. (Sen. Bill No. 1851 (1977-1978 Reg. Sess.) Stats. 1978, ch. 937, § 1, p. 2913.) The 1978 amendment removed the 240-week limitation on aggregate temporary *total* disability within a 5-year postinjury period for injuries occurring on or after January 1, 1979. The statute now provides that "[a]ggregate disability payments for a single injury occurring prior to January 1, 1979, causing *temporary disability* shall not

---

[1]All further statutory references are to the Labor Code unless otherwise indicated.

[2]We asked the parties to brief the issue whether any disability arising from Nickelsberg's further medical treatment might constitute a new, compensable injury. We have determined that resolution of this case does not require that we address that issue and, like the Court of Appeal, we only decide the question of the workers' compensation judge's jurisdiction.

extend for more than 240 compensable weeks within a period of five years from the date of injury. [¶] Aggregate disability payments for a single injury occurring on or after January 1, 1979, causing *temporary partial disability* shall not extend for more than 240 compensable weeks within a period of five years from the date of the injury." (§ 4656, italics added.)

Relying on the current version of section 4656, Nickelsberg argues that the workers' compensation judge had jurisdiction to award further temporary *total* disability indemnity more than five years after the original injury. Nickelsberg assumes that an initial award of "future medical treatment" must reasonably be interpreted to include, as a "secondary consequence," an award of future temporary total disability indemnity resulting from such treatment and that section 4656, as amended, removes all limits on awards for temporary total disability. Based on that assumption, Nickelsberg argues that the workers' compensation judge simply *enforced* his original award under section 5803.[3]  Implicit in Nickelsberg's argument is the understanding that the provisions in section 5804 for the amendment of an award[4] and in 5410 for an award of "new and further disability"[5] are inapplicable.

A.  *The Workers' Compensation Judge Was Not Merely Enforcing Nickelsberg's Original Award Pursuant to Section 5803*

■■■■  As indicated, Nickelsberg argues that an award of future medical treatment implicitly includes, as a secondary consequence, an award of future temporary total disability indemnity. We disagree. Medical treatment and temporary total disability are two different classes of benefits. (*Burton* v.

---

[3]Section 5803 states: "The appeals board has continuing jurisdiction over all its orders, decisions and awards made and entered under the provisions of this division, and the decisions and orders of the rehabilitation unit established under Section 139.5. At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any order, decision, or award, good cause appearing therefor.

"This power includes the right to review, grant or regrant, diminish, increase, or terminate, within the limits prescribed by this division, any compensation awarded, upon the grounds that the disability of the person in whose favor the award was made has either recurred, increased, diminished, or terminated."

[4]Former section 5804 states in part: "No award of compensation shall be rescinded, altered, or amended after five years from the date of the injury except upon a petition by a party in interest filed within such five years and any counterpetition seeking other relief filed by the adverse party within 30 days of the original petition raising issues in addition to those raised by such original petition."

[5]Section 5410 states: "Nothing in this chapter shall bar the right of any injured employee to institute proceedings for the collection of compensation within five years after the date of the injury upon the ground that the original injury has caused new and further disability or the need for vocational rehabilitation benefits. The jurisdiction of the appeals board in these cases shall be a continuing jurisdiction at all times within this period. The section does not extend the limitation provided in Section 5407."

*Workers' Comp. Appeals Bd.* (1980) 112 Cal.App.3d 85, 89 [169 Cal.Rptr. 72].) No reported opinion supports the conclusion that temporary total disability is merely a secondary consequence or benefit of a medical award.

██ Indeed, "[m]edical treatment and disability indemnity are separate and distinct elements of compensation which fulfill different, though complementary, legislative goals. Employer liability for medical and surgical services is provided in major part in order to facilitate the worker's speedy recovery and to maximize his [or her] productive employment. [Citation.] Temporary disability indemnity is intended primarily to substitute for the worker's lost wages, in order to maintain a steady stream of income. [Citation.] Permanent disability indemnity has a dual function: to compensate both for actual incapacity to work and for physical impairment of the worker's body, which may or may not be incapacitating. [Citation.]" (*J. T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 333 [200 Cal.Rptr. 219].) ██ As the WCAB noted in the present case, "an award of further medical treatment does not implicitly carry with it a commensurate award of temporary total disability indemnity." Temporary total disability, which is paid as a result of missing work because of an injury, is a benefit separate and distinct from medical treatment.

Hence, Nickelsberg errs in assuming that temporary total disability indemnity is merely a secondary consequence of an award of further medical treatment. Based on this mistaken assumption, Nickelsberg further argues that when future medical treatment is included in an original award, section 4656, as amended, allows an applicant to recover temporary total disability benefits whenever, and for as long as, they are required. He is entitled to these benefits, he contends, as a mere enforcement of his original award under section 5803. We disagree.

The plain language of section 4656 does not support Nickelsberg's interpretation. ██ "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citation.] In order to determine this intent, we begin by examining the language of the statute. [Citation.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) ██ The 1978 amendment of section 4656 removed the 240-week limitation on aggregate temporary total disability indemnity within a 5-year postinjury period. The removal of this limitation, however, does not imply that temporary total disability can now be awarded at any time and for any period as a result of an original award of future medical treatment. Such a broad interpretation of the amendment would abrogate the time and jurisdictional limitations of sections 5410 and 5804. (See, *post*, pp. 297-299.)

Nickelsberg bases his interpretation of the amendment to section 4656 on the preenactment comments of various participants in the legislative process. For example, the Department of Industrial Relations in its enrolled bill report stated that "[p]resent law provides that payment of temporary disability indemnity shall not be paid for more than 240 weeks within a period of 5 years from the date of injury. In most instances, temporary disability is concluded long before this point is reached. There are however cases which create a hardship situation where an industrial injury results in the need for surgery more than 5 years after the date of injury. Due to the arbitrary time limit, the employee is then only entitled to receive medical benefits and is precluded from receiving temporary disability indemnity resulting from the hospitalization and surgery. Although occurring rarely, these situations create an obvious hardship that is difficult to defend." (Agr. & Services Agency, Sen. Industrial Relations Com. Enrolled Bill Rep. and Recommendations to Governor on Sen. Bill No. 1851 (1977-1978 Reg. Sess.) as amended Aug. 14, 1978, p. 1.)

Nickelsberg also highlights a somewhat different interpretation of the amendment of section 4656 contained in an Assembly Ways and Means Committee staff analysis of Senate Bill No. 1851. The analysis states that the intent of the bill was "to provide disability benefits for temporary totally disabled persons beyond the existing 240 week limit. Proponents contend that often surgery or other treatment is required years after an injury to remove sergically [*sic* ] implanted devices (plates, pins, etc.)." (Assem. Ways and Means Com., Staff Analysis of Sen. Bill No. 1851 (1977-1978 Reg. Sess.) as amended Aug. 14, 1978, p. 1.)

However, other portions of the legislative history contradict Nickelsberg's interpretation of Senate Bill No. 1851. For example, an Assembly Finance, Insurance, and Commerce Committee analysis of the bill states that the removal of the limitation on temporary total disability indemnity "would provide for the payment of the workers' compensation temporary total disability benefits *for as long as the temporary total disability continues.*" (Assem. Finance, Insurance, & Commerce Com., Analysis of Sen. Bill No. 1851 (1977-1978 Reg. Sess.) as amended May 10, 1978.)

This analysis of the bill indicates that, in amending section 4656, the Legislature intended to remove the cap of 240 weeks in a 5-year period for the payment of temporary total disability and to allow an applicant who is *continuously* temporarily totally disabled to continue to receive benefits without an arbitrary cutoff date. Such an interpretation is also supported by a consultant's report to the Senate Industrial Relations Committee. The report states that the proposed amendment to section 4656 "would eliminate the 240-week limitation on the payment of temporary disability benefits for

a single injury, and instead provide that such benefits shall *continue as long as the temporary disability continues.*" (Rep. of Consultant Casey L. Young to the Sen. Industrial Relations Com. (Apr. 27, 1978) p. 1, italics added.)

Furthermore, the mandated cost estimate of the bill prepared by the Department of Finance states: "Although data is not available to predict the number of cases affected [by the amendment] and the additional losses per case, we believe that such cases will be quite rare. *In most cases, either the disability becomes permanent and stationary and thus no longer temporary, or the worker recovers long before 240 weeks of temporary disability benefits are paid.*" (Dept. of Finance, Mandated Cost Estimate (May 10, 1978) p. 2, italics added.)

As indicated, these statements, consistent with the language of the statute, suggest that the amendment to section 4656 was intended to permit an applicant to receive temporary total disability for as long as he or she is continuously disabled without an arbitrary cutoff date. These statements, however, do *not* suggest the Legislature intended to permit an applicant, based on an award of future medical benefits, to be able to invoke the WCAB's jurisdiction to award temporary total disability benefits whenever he or she requires medical treatment for a previous injury.

Moreover, the Department of Finance, in estimating the financial impact of the amendments to section 4656, indicated that the amendments would affect "very few cases" and that the costs of the amendment would be quite small. "Losses will increase less than 0.1 percent and thus no premium increase will be necessary. Thus insured local governmental entities will incur no additional costs." (Dept. of Finance, Mandated Cost Estimate, *supra,* at p. 1.) The mandated cost estimate of the amendment prepared by the Department of Finance further states: "We do not anticipate significant increases in loss-experience to result from this bill." (*Id.* at p. 2.) These conservative cost estimates are inconsistent with an interpretation of section 4656 that would allow unlimited awards of temporary total disability indemnity in every case in which future medical benefits have been awarded. The cost estimates are consistent, however, with an interpretation of the amendment as only affecting applicants who are continuously disabled.

Although Nickelsberg contends his interpretation of the bill would effect only a limited number of cases, the implications of his proposed interpretation are broad. Settlements of workers' compensation claims often include an award of future medical care. Under Nickelsberg's interpretation, each of these cases would implicitly also include an award of future temporary total

disability. As a result, employers would be liable for this further temporary total disability indemnity, although it was not contemplated in the original award.

As shown, temporary total disability indemnity and future medical benefits serve distinct and different roles in the workers' compensation system. The different roles of the two classes of benefits negate Nickelsberg's conclusion that an award of future medical treatment implicitly includes an award of future temporary total disability. Furthermore, the legislative history of Senate Bill No. 1851 does not conclusively support an interpretation of section 4656 as allowing a workers' compensation judge to award unlimited further temporary total disability as a secondary consequence of an award of further medical benefits. Hence, it is incorrect to characterize the award of further temporary total disability indemnity to Nickelsberg as a mere enforcement of his original award under section 5804.

Moreover, Nickelsberg's interpretation of Senate Bill No. 1851 would require us to conclude that the bill somehow amended or altered the time and jurisdictional limits of sections 5410 or 5804 to allow resumption of temporary total disability indemnity whenever an award of future medical benefits results in a period of further temporary total disability. We do not believe that the Legislature intended such a broad result. Nickelsberg's argument is contrary to both clear statutory construction and well-established judicial interpretation of sections 5410 and 5804. Moreover, it controverts the entire statutory scheme of workers' compensation judicial administration, which provides for time and jurisdictional limitations upon the commencement of proceedings and modifications of prior determinations.

■ The WCAB is vested with the authority and jurisdiction to conduct proceedings for the recovery of compensation. (§ 5300 et seq.) Concomitantly, it is empowered with continuing jurisdictional authority over all of its orders, decisions and awards. (§ 5803.) However, this power is not unlimited. The WCAB's authority under section 5803 to *enforce* its awards, including ancillary proceedings involving commutation, penalty assessment and the like, is not to be confused with its limited jurisdiction to *alter* prior awards by benefit augmentation at a later date. The latter action is subject to the provisions of sections 5410 and 5804. (*General Foundry Service* v. *Workers' Comp. Appeals Bd.* (1986) 42 Cal.3d 331 [228 Cal.Rptr. 243, 721 P.2d 124]; *Broadway-Locust Co.* v. *Ind. Acc. Com.* (1949) 92 Cal.App.2d 287, 290-294 [206 P.2d 856]; *Ruffin* v. *Olson Co.* (1987) 52 Cal.Comp.Cases 335.)

It may not be inferred, as Nickelsberg suggests, that the 1979 amendment, removing the 240-week limitation on aggregate temporary total disability payments within a 5-year postinjury period, in any manner modified the time or jurisdictional limitations of either section 5410 or section 5804. Nickelsberg supports his conclusion, relying on the liberal construction mandate of section 3202.[6] However, the rule of liberal construction stated in section 3202 should not be used to defeat the overall statutory framework and fundamental rules of statutory construction. Furthermore, statutes should be interpreted in such a way as to make them consistent with each other, rather than obviate one another. (*People* v. *Pieters, supra*, 52 Cal.3d 894, 899.) It is logical to presume that the Legislature was aware of the existence of all relevant statutes, including sections 5410 and 5804, when it considered the change in section 4656. Significantly, as observed by the Court of Appeal, the Legislature did not specifically amend sections 5410 and 5804 to accomplish the broad purpose Nickelsberg suggests motivated the change in section 4656.

Since the Legislature did not explicitly change the jurisdictional limitations of the WCAB or the time limitations of section 5410 (see *Singh* v. *Workers' Comp. Appeals Bd.* (1987) 52 Cal.Comp.Cases 15), accepting Nickelsberg's contention would require us to conclude that the Legislature implicitly repealed sections 5804 and 5410. Repeals by implication are disfavored and are recognized only when potentially conflicting statutes cannot be harmonized. (*Dew* v. *Appleberry* (1979) 23 Cal.3d 630, 636 [153 Cal.Rptr. 219, 591 P.2d 509].) Disharmony, however, between the provisions of section 4656 and those of sections 5410 and 5804 exists only if one takes—as does Nickelsberg—an overly broad view of when temporary total disability indemnity may be awarded. Such a view ignores both the statutory classification of these sections[7] and the Legislature's presumed awareness, when it amended section 4656, of the long history of judicial interpretation of sections 5410 and 5804. (*People* v. *Hallner* (1954) 43 Cal.2d 715, 719 [277 P.2d 393].)

---

[6]Section 3202 states: "This division and Division 5 (commencing with Section 6300) shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

[7]The conclusion that the amendment of section 4656 does not alter other jurisdictional or time limitations is supported by analysis of the legislative placement and classification given sections 4656, 5410, 5803, and 5804. Section 4656 is found in chapter 2, division 4, part 2 of the Labor Code. Part 2 is entitled "Computation of Compensation," and chapter 2 is designated "Compensation Schedules." Sections 5410, 5803, and 5804, in contrast, are placed in part 4, "Compensation Proceedings." Section 5410 is part of chapter 2, entitled "Limitations of Proceedings," and sections 5803 and 5804 are in chapter 6, entitled "Findings and Awards."

With these statutory classifications so evident, it is unlikely that the Legislature intended that the amendment to section 4656 would implicitly alter either the time limitations for initiating proceedings under section 5410, or the jurisdictional restrictions of sections 5803 and 5804.

Furthermore, sound public policy supports the conclusion that the amendment to section 4656 does not serve to abrogate the time and jurisdictional limits of sections 5410 and 5804. Those sections do not express a mere concern for barring stale claims. The statutes express legislative concern for certainty and finality in the determination of compensation benefit obligations. The WCAB's own interpretation of its limited power to award temporary total disability more than five years after an original injury recognizes this need for certainty and finality. As was stated in *Broadway-Locust Co.* v. *Ind. Acc. Com.*, *supra*, 92 Cal.App.2d at page 293: "This long continued interpretation by the commission of its own powers has necessarily led industry to recognize and adjust itself to liabilities and responsibilities consistent with well understood limitations as to time. . . . It is important . . . that the overall cost of [workers'] compensation insurance should be ascertainable with reasonable certainty in order that business operations may be adjusted accordingly and state agencies . . . may be enabled to operate with the greatest measure of efficiency and competency. Contingent liability unlimited as to time for which the commission now argues would result in great confusion. No employer or his insurance carrier would know what claims might emerge from cases long since settled and written off."[8]

Finally, the WCAB's own determination that the workers' compensation judge lacked jurisdiction under section 4656, as amended, to award further temporary total disability is entitled to significant respect on judicial review. In the instant case, following the workers' compensation judge's award of further temporary total disability indemnity, the WCAB granted reconsideration on its own motion. (§ 5900, subd. (b).) The WCAB found that the original "award of further medical treatment does not implicitly carry with it a commensurate award of temporary total disability," and concluded that Nickelsberg's petition was time barred. The Court of Appeal agreed with the WCAB that "the workers' compensation judge lacked jurisdiction to award further temporary total disability indemnity." The WCAB's interpretation of its jurisdictional authority to grant new and further temporary disability, as expressed in its decision on reconsideration, is not only persuasive on this issue, its interpretation and application of these three statutes is entitled to

---

[8] Based on section 4656, as amended, and our decision in *General Foundry Service* v. *Workers' Comp. Appeals Bd.* (1986) 42 Cal.3d 331 [228 Cal.Rptr. 243, 721 P.2d 124], the Court of Appeal in this case indicated that it might be proper for the WCAB to reserve jurisdiction to award temporary total disability indemnity related to hospitalization or surgery occurring more than five years after the date of injury.

We note *General Foundry Service* v. *Workers' Comp. Appeals Bd.* was not decided until approximately four years after Nickelsberg received his initial award. Also, as observed by the Court of Appeal, the WCAB did not reserve jurisdiction to award Nickelsberg further temporary total disability. Consequently, we have no occasion in the present case to determine whether the WCAB does have authority to reserve jurisdiction to award temporary total disability indemnity more than five years after the date of the original injury.

significant respect upon judicial review.[9]  (See *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743] ["We have generally accorded respect to administrative interpretations of a law and, unless clearly erroneous, have deemed them significant factors in ascertaining statutory meaning and purpose. [Citations.]"]; *Mudd* v. *Mc-Colgan* (1947) 30 Cal.2d 463, 470 [183 P.2d 10].) We conclude that the WCAB's interpretation and application of the relevant statutes was correct and adds further support to the conclusion that Nickelsberg's petition to recover temporary total disability is barred.

### B.   *Nickelsberg Is Not Entitled to Receive Further Temporary Total Disability Indemnity*

Having rejected Nickelsberg's interpretation of the amendment of section 4656, we still must determine if the workers' compensation judge had jurisdiction under another section of the workers' compensation laws to award Nickelsberg further temporary total disability. Given our interpretation of section 4656, which precludes considering Nickelsberg's petition as merely an enforcement action under section 5803, Nickelsberg can only recover for temporary total disability at this point in time if: (1) the WCAB had authority to amend its original award under section 5804; or (2) he had suffered a "new and further disability" under section 5410 and had filed a timely claim for recovery. As will become evident, we conclude that Nickelsberg cannot bring his petition within either of these two avenues of possible recovery.

### 1.   *The WCAB Correctly Determined That the Workers' Compensation Judge Lacked Jurisdiction Under Section 5804*

The first theory under which Nickelsberg might be able to recover on his claim for temporary total disability is if the WCAB had jurisdiction to amend his original award. Section 5804 allows a party, in certain circumstances, to file a petition to rescind, alter, or amend an original award. However, such a petition must be filed within five years of the original injury. (§ 5804; see, *ante*, p. 293, fn. 4.) Nickelsberg's suffered his original injury on January 5, 1979, and filed his petition for further temporary total disability on February 8, 1988. Because Nickelsberg's petition to reopen his award was filed more than five years from the date of his original injury, the

---

[9]See also, *Ruffin* v. *Olson Glass Co.* (1987) 52 Cal.Comp.Cases 335, 343 where the WCAB rejected the argument that the amendment to section 4656 permits an award of temporary total disability indemnity "upon the happening of some contingency, such as surgery." According to the WCAB in *Ruffin*, "[s]uch an award . . . would be nothing more than a subterfuge to avoid the limitation of jurisdiction contained in Labor Code Sections 5410 and 5804." (*Ibid.*)

WCAB correctly determined that the workers' compensation judge lacked jurisdiction to alter or amend the original award under section 5804 to provide for further temporary total disability.

### 2. *"New and Further Disability"*

The second possible avenue of recovery is a petition for "new and further disability" under section 5410. An employee may institute proceedings, within five years from the date of the original injury, for the collection of compensation upon the ground that the original injury has caused new and further disability. (§ 5410; see, *ante*, p. 293, fn. 5.) In the present case, Nickelsberg initially filed his petition to reopen his award claiming that he had suffered a new and further disability pursuant to section 5410. In his trial memorandum filed the same day as the petition, however, Nickelsberg argued that he was seeking enforcement of his original award pursuant to section 4656.

The term "new and further disability" is not defined by statute and its meaning is not entirely clear. (*Pizza Hut of San Diego, Inc.* v. *Workers' Comp. Appeals Bd.* (1978) 76 Cal.App.3d 818, 825 [143 Cal.Rptr. 131].) However, one Court of Appeal has described a "new and further disability" as "a disability in addition to that for which the employer previously provided benefits as required by the statute." (*Id.* at p. 822.) "The phrase 'further disability' presupposes that such disability is in addition to that disability for which proceedings were timely commenced or for which compensation already was paid (*Kauffman* v. *Industrial Accident Com.* [(1918)] 37 Cal.App. 500, 502-503 [174 P. 690]). It has also been recognized '[s]ome significance must be given to the word "new." ' (See *Westvaco etc. Corp.* v. *Ind. Acc. Com.* [(1955)] 136 Cal.App.2d 60, 64-68 [288 P.2d 300].)" (*Id.* at p. 825.)

The Court of Appeal in *Pizza Hut* further noted: " 'New and further disability can develop only after a cessation of temporary disability or an interruption of temporary disability by a period of nondisablement. A new period of temporary disability . . . is a new and further disability. . . . [¶] Historically, a change in physical condition necessitating further medical treatment had been considered new and further disability whether or not accompanied by time lost from work. [Citation.]' (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 4.21, pp. 108-109; see also 1 Hanna, [Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.)] § 9.03[2].) Thus, '[c]ommonly, new and further disability refers to a recurrence of temporary disability, a new need for medical treatment, or the change of a temporary disability into a permanent disability.' (Cal. Workmen's Compensation Practice (Cont.Ed.Bar 1973) § 12.12, p. 410.)" (*Pizza*

*Hut of San Diego, Inc.* v. *Workers' Comp. Appeals Bd., supra,* 76 Cal.App.3d at p. 825.)

Nickelsberg's disability may indeed be a "new and further disability." After Nickelsberg's 1979 industrial injury, he received temporary total disability indemnity from January 6, 1979, through June 8, 1981. He received a permanent disability rating of 66¾ percent. After a period of nondisablement, Nickelsberg had back surgery in July 1987. As a result, he now seeks temporary total disability indemnity for the period of March 7, 1987, through November 25, 1987.

In the final analysis, however, we need not decide if Nickelsberg's disability qualifies as a new and further disability. If it does, his petition would be untimely under section 5410. If it does not, his action could only be brought as a petition to amend his award. However, as previously noted, such an action under section 5804 would also be untimely.

### CONCLUSION

Nickelsberg seeks from this court an interpretation of section 4656 that would provide unlimited temporary total disability when an award of further medical treatment is made. Such an interpretation is not justified by either clear legislative intent or sound statutory construction. Hence, the workers' compensation judge lacked jurisdiction to award temporary total disability to Nickelsberg.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Arabian, J., and Baxter, J., concurred.

**BROUSSARD, J.,** Dissenting.—The Legislature's 1978 amendment of Labor Code section 4656[1] was expressly intended to allow workers in Nickelsberg's position to obtain temporary total disability indemnity while recovering from surgery. The majority does not honor that intent, but rather seizes upon an interpretation of that amendment, supported in neither the statutory language nor its history, that defeats the amendment's purpose. I respectfully dissent.

### I.

There are cases in which we are constrained by statute to accept outcomes that are manifestly unjust. In those cases our only recourse is to implore the

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

Legislature to enact a remedy when a judicially sanctioned remedy lies beyond the courts' powers. In the instant case, however, the Legislature took action to relieve injured workers of a burden the statutes had otherwise placed upon those workers.

It is beyond question that the Legislature, in amending section 4656, considered the plight of workers in exactly the position in which Nickelsberg today finds himself. (See maj. opn., *ante*, at p. 295.) A legislative staff analysis accompanying the amendment specifically stated: "Proponents [of the amendment] contend that often surgery or other treatment is required years after an injury to remove [surgically] implanted devices . . . ." (Assem. Ways and Means Com., Staff Analysis of Sen. Bill No. 1851 (1977-1978 Reg. Sess.) as amended Aug. 14, 1978, p. 1.) One agency, commenting on the pending bill, noted: "There are . . . cases which create a hardship situation where an industrial injury results in the need for surgery more than 5 years after the date of the injury. Due to the arbitrary time limit [of the prior statute], the employee is then only entitled to receive medical benefits and is precluded from receiving temporary disability indemnity resulting from the hospitalization and surgery. Although occurring rarely, these situations create an obvious hardship that is difficult to defend." (Agr. & Services Agency, Sen. Industrial Relations Com. Enrolled Bill Rep. and Recommendations to Governor on Sen. Bill No. 1851 (1977-1978 Reg. Sess.) as amended Aug. 14, 1978, p. 1.)

It is rare that legislative history will give us such explicit guidance in the interpretation of statutes and, in this instance, I am bewildered by the majority's suggestion that this history is "contradicted" or otherwise invalid. The "other portions of the legislative history" cited by the majority do not support the majority's suggestion that temporary total disability indemnity was intended to be *limited* to cases involving workers who had suffered *continuous* temporary total disability. Rather, the reports relied upon by the majority each stated that indemnity for temporary total disability would continue for as long as the temporary total disability continues. These statements are indubitably true. Yet the majority italicizes certain phrases as if to suggest that the words in each instance were intended to emphasize that the Legislature wished to *limit* recovery to temporary total disability suffered continuously.[2] The amended statute deletes *all* reference to temporary total disability occurring after 1978, and therefore cannot be read to support the proposition that, for temporary total disability to be paid more than five

---

[2]The legislative history in support of Nickelsberg's position also expressly noted that the additional cost to the state, if Senate Bill No. 1851 were passed, would be negligible. This material refutes the majority's speculation that the cost of Senate Bill No. 1851, 1977-1978 Regular Session, if implemented as discussed in the legislative history, necessarily would be significant. (See maj. opn., *ante*, at p. 296.)

years after the date of injury, the disability must be suffered *continuously*. (See § 4656.) Moreover, such an interpretation is fundamentally inconsistent with the legislative history recognizing that, "where an industrial injury results in the need for surgery more than 5 years after the date of the injury," an injured employee is placed in a "hardship situation" because that employee "is precluded from receiving temporary disability indemnity resulting from the hospitalization and surgery."[3]

## II.

In many cases, as in this case, future medical treatment is awarded in anticipation of major surgery at an indeterminate time in the future. Section 4656 was amended, not to allow *any* instance of temporary total disability to be awarded more than five years after an injury, but for the particular case when the disability arises *as a result of the medical treatment provided through the initial award*. Because the disability is, in my view, inseparable from the treatment, I believe that an award of future medical treatment implicitly carries with it a provision for temporary total disability indemnity should that medical treatment be disabling.[4]

Preliminarily, we must note that the workers' compensation laws' provisions for injured employees' medical treatment are unequivocal: employees are entitled to *whatever* treatment is needed to cure and relieve from the effects of the industrial injury. Thus, article XIV, section 4 of the California Constitution requires *"full* provision for such medical, surgical, hospital and

---

[3]It is important to note that the majority never affirmatively rejects the interpretation of the amendment to section 4656 proffered by Nickelsberg, but merely assert that "the legislative history of Senate Bill No. 1851 does not *conclusively* support [Nickelsberg's interpretation]" (maj. opn., *ante*, at p. 297, italics added) in light of the "contradictory" history discussed in the majority opinion. Accordingly, a court interpreting section 4656 in the future (e.g., to determine whether a workers' compensation judge may reserve jurisdiction to award temporary total disability) must consider how the legislative history presented by Nickelsberg, as well as that presented by the majority, affects the question presented to that court.

[4]The majority, in making a policy argument in favor of its position, grossly misstates the position that Nickelsberg advocates: "the implications of [Nickelsberg's] proposed interpretation are broad. Settlements of workers' compensation claims often include an award of future medical care. Under Nickelsberg's interpretation, each of these cases would implicity also include an award of future temporary total disability. As a result, employers would be liable for this further temporary total disability indemnity, although it was not contemplated in the original award." (Maj. opn., *ante*, at pp. 296-297.)

In fact, Nickelsberg only argues that every award of future medical treatment implicitly carries with it temporary total disability indemnity *resulting from that future medical treatment*. Such an interpretation comports with the legislative intent in amending section 4656, and would have far less impact than the straw man attacked by the majority, i.e., an award of future medical treatment that includes an award for *any* occurrence of temporary total disability, including disability totally unrelated to medical treatment provided pursuant to an injured worker's award.

other remedial treatment as is requisite to cure and relieve from the effects of such injury . . . ." (Italics added.) Section 4600, which establishes the treatments to which injured workers are entitled, also requires employers to provide a broad range of treatments: "Medical, surgical, chiropractic, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus . . . reasonably required to cure or relieve from the effects of the injury *shall be provided by the employer.*" (Italics added.)

In order to cure and relieve himself or herself from the effect of the injury, the injured employee has no option but to follow doctor's orders after surgery. The treatment may be essentially affirmative—e.g., to undergo rigorous physical therapy—or it may be essentially negative—e.g., to avoid strenuous physical activity. In this instance, Nickelsberg was required to absent himself from work while recuperating from the treatments. As a policy matter, it should be clear that full provision for remedial treatment of an industrial injury should not be artificially limited to medical expenses alone, but rather should provide the necessary resources for an employee disabled *by medical procedures* to fully recuperate from those procedures.

The majority indulges in an academic exercise that evades the issue and, accordingly, sheds no light on whether temporary total disability can be paid to an employee pursuant to an award of future medical treatment. Typically, medical treatment and disability indemnity *are* considered separate and distinct elements of compensation. (See maj. opn., *ante*, at p. 294.) Thus, for the purposes of assessing penalties (*Burton* v. *Workers' Comp. Appeals Bd.* (1980) 112 Cal.App.3d 85 [169 Cal.Rptr. 72]) or assuring that an employee with asbestosis may get medical treatment before disability manifests itself (*J. T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327 [200 Cal.Rptr. 219]), courts properly draw a distinction between these classes of benefits. However, the fact that they are different classes of benefits does not determine the issue that has been placed squarely before the court today: May temporary total disability indemnity *that results directly from covered medical treatment* be awarded incident to an award of future medical treatment?

An injured worker sorely needing major surgery more than five years after the date of his or her injury will be assured that the actual cost of the treatment will be covered, yet under the majority's holding he or she cannot be compensated under an existing award (at least, without an express reservation of jurisdiction) for his or her time out of work.[5] For treatments

---

[5]The majority opinion does not rule out the possibility that a worker's disability arising from medical treatment may in itself constitute a new, compensable injury for the purposes of

like Nickelsberg's, the prospect of being off work for several months without compensation may prove prohibitively expensive. Some workers will have no alternative but to forgo surgery—at least, for as long as is possible.

When the worker's interest is thus served by assuring that he or she can receive temporary total disability indemnity for disability sustained as the result of, and incident to, an award of future medical treatment, the award should be interpreted to include indemnity. In other instances, both the courts and the Legislature have seen fit to award temporary total disability incident to medical treatment, in spite of the general premise that they are different classes of benefits. (See § 4600 [allowing for compensation of medical expenses and one day of temporary total disability incident to a medical examination]; *Caldwell* v. *Workmen's Comp. App. Bd.* (1969) 268 Cal.App.2d 912, 917 [74 Cal.Rptr. 517] [allowing for an award of one day of temporary total disability for time lost incident to a medical diagnosis of alleged industrial injury].) Thus, the courts and the Legislature have acknowledged that medical treatment is a practical impossibility if an employee cannot afford to forgo the time off from work. That same rationale persuades me that our workers' compensation statutes should provide Nickelsberg compensation for the time he needs to recuperate from surgery, as well as for the costs of the treatment itself.

In another context, a rigid distinction between "classes of benefits" might be supported in policy; here, however, we are obligated to interpret the relevant statutes in the injured worker's favor. Section 3202 commands that the provisions of this code "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." This provision is not a rule which courts in their discretion may limit or disregard, but is a statutory mandate. (See, e.g., *Industrial Indem. Exch.* v. *Ind. Acc. Com.* (1948) 87 Cal.App.2d 465, 467 [197 P.2d 75].) When "a provision of the Act is susceptible of an interpretation either beneficial or detrimental to an injured employee we are called upon . . . to adopt the construction beneficial to such employee." (*Liptak* v. *Industrial Acc. Com.* (1926) 200 Cal. 39, 42 [251 P. 635].) Hundreds of reported cases support and apply this principle.[6] My analysis

the workers' compensation laws. (Cf. *Rodgers* v. *Workers' Comp. Appeals Bd.* (1985) 168 Cal.App.3d 567, 571-574 [214 Cal.Rptr. 303] [injury incurred in the course of employer-provided rehabilitation constitutes a new, compensable injury].)

[6]There are, of course, circumstances in which a court is not justified in construing a statute in favor of the injured worker. A limiting construction may be required by the "unmistakable language of a statute" (*Earl Ranch, Ltd.* v. *Industrial Acc. Com.* (1935) 4 Cal.2d 767, 769 [53 P.2d 154]), and the "Legislature's intent as expressed in the statute" cannot be ignored (*Ruiz* v. *Industrial Acc. Com.* (1955) 45 Cal.2d 409, 413 [289 P.2d 229]; see *Fuentes* v. *Workers'*

of the issues yields the inevitable conclusion that we must adopt the interpretation of the statutes at issue that would afford Nickelsberg an opportunity to collect temporary total disability indemnity.

### III.

For the reasons discussed above, I would reverse the judgment of the Court of Appeal.

Mosk, J., and Kennard, J., concurred.

*Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 [128 Cal.Rptr. 673, 547 P.2d 449]). Yet this is not such a case. There is no unmistakable language and no statutory expression of legislative intent to justify denying an injured employee in Nickelsberg's position temporary total disability indemnity. At best, the most the majority's argument does is put forward an alternative construction of section 4656, and, given two reasonable constructions of that statute, this court is required by law to adopt the construction which will permit recovery of benefits by the injured worker.