[Civ. No. 29040. Fourth Dist., Div. Two. Dec. 23, 1982.]

FAIRVIEW STATE HOSPITAL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
MATILDA J. KURASH, Respondents.

COUNSEL

Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva and Robert A. La Porta for Petitioner.

Banks, Leviton, Kelley, Drass & Kelsey and Mary Carol Scherb for Respondents.

OPINION

KAUFMAN, J.—Fairview State Hospital, a legally uninsured agency of the Department of Health of the State of California, seeks review of an order of the Workers' Compensation Appeals Board (Board) insofar as it purports to award the applicant, Matilda J. Kurash, further medical treatment. We conclude that the evidence specified by the Board in its order denying reconsideration does not constitute substantial evidence to support that part of the award. Accordingly, that part of the award must be annulled and the matter returned to the Board for a redetermination of the issue.

The applicant, approximately 36 years of age, has been employed at Fairview State Hospital (Hospital) as a psychiatric technician since 1968. On August 26, 1977, she sustained an injury to her back while lifting a patient. Since that time she has suffered chronic back pain which has been little relieved by treatment except intermittently. She was released to return to work on October 1, 1978, and the last formal medical treatment disclosed by the record was administered by Dr. Shen on November 7, 1978, at which time Dr. Shen declared applicant's orthopedic disability permanent and stationary. He made no recommendation for further medical treatment.

The application for benefits was set for hearing on November 8, 1979, but was taken off calendar so that the applicant could obtain a psychiatric medical evaluation and report.

Applicant was examined for psychiatric evaluation by Dr. Charles W. Jeffries on November 12 and 28, 1979. Dr. Jeffries reported his findings in a report dated December 11, 1979. He stated in pertinent part: "Since her injury, Mrs. Kurash has experienced frequent depressive moods and crying spells. She wept several times during the interview when talking about her feelings of depression. 'I just cry a lot. I feel like there's something wrong. I don't know. I feel down in the dumps . . . I get frustrated with myself. I'm frustrated because I feel like this and I feel like I'm losing control. . . .' [¶] Mrs. Kurash has felt a deterioration in all interpersonal relationships. 'I don't seem to relate to people.

That's how I feel.' She indicated she finds herself more distant, withdrawn, and out of touch with other persons. She said she has experienced a difficulty in her marital relationship and her husband has started to drink a lot more.''

Dr. Jeffries' diagnosis was: "Depressive reaction, slight to moderate, secondary to work injury. *Medical treatment should be provided.*" (Italics added.) Applicant had not theretofore made any request for psychological treatment, nor so far as the record discloses did she make such a request thereafter.

About a year and a half later applicant was examined for psychiatric evaluation on behalf of the employer by Dr. Joel J. Frank who submitted a report dated May 1, 1981. Based upon his examination and his review of the medical records, including the report of Dr. Jeffries, Dr. Frank concluded that applicant did have a psychiatric disability which he described as "psychogenic pain disorder."[1] He concluded the disability was permanent and stationary and recommended: "No psychiatric treatment is felt to be indicated in this case and therefore none is recommended."

Thereafter the applicant was referred to an agreed medical examiner, Dr. Martin J. Morris, a specialist in orthopedics. Dr. Morris submitted a report dated November 20, 1981, and was subsequently cross-examined on the report. He concluded that applicant had "[r]esiduals of musculoligamentous strain of the low back" but concluded that neither muscle relaxants nor other palliative treatment would benefit her.

On approximately March 19, 1982, the parties filed with the Board a form entitled "Stipulations with Request for Award" in which it was stipulated that applicant had sustained injury to her back, neck and psyche arising out of and in the course of employment resulting in permanent disability of 20 percent. The issue of need for further medical treatment to cure or relieve from the effects of the injury was submitted on the medical record. On March 23, 1982, an order issued awarding applicant permanent disability in accordance with the stipulation and request for award, together with: "Further medical treatment . . . ." The only reason or evidence given or referred to in the order reads: "Based on the opinion of Dr. Jeffries, there is need for treatment."

---

[1]Dr. Frank stated: "The psychiatric disability is expressed in orthopedic terms. That is, in the form of a chronic pain syndrome. This woman's overt psychiatric symptoms such as depression are minimal and do not in and of themselves constitute a psychiatric disability. In other words, the psychiatric disability is manifested primarily via orthopedic symptoms as a psychogenic pain disorder. [¶] I see no gross evidence of malingering on the part of Mrs. Kurash and she does seem to genuinely experience the pain which she describes. In establishing a level of psychiatric disability, I must state that this would best be formulated in terms of lifting restrictions which have been quantified by several orthopedic examiners."

Hospital petitioned for reconsideration. In his recommendation on the petition for reconsideration the workers' compensation appeals judge (WCJ) relied upon the statement in Dr. Jeffries' report of December 11, 1979: "'Medical treatment should be provided.'" The WCJ did note that Dr. Franks' report of May 1, 1981, expressly indicated that no psychiatric treatment was indicated and that none was recommended but stated: "That report, however, seems to be contradictory in that he found the injury to be the percipiatating [*sic*] cause of psychiatric disability which he considered to be permanent and stationary."[2] The WCJ concluded: "The more reasonable conclusion as to treatment seems to be one drawn by Dr. Jeffries."[3]

Hospital filed a timely petition for reconsideration which was denied by order of the Board dated May 6, 1982, "for the reasons stated in [the WCJ's recommendation] which we adopt and incorporate." However, the second and final paragraph of the Board's order added: "Moreover, the award is also supported by the rationale of *Truck Ins. Exchange* v. *IAC (Patterson)* 147 Cal.App.2d 460, 22 CCC 15. As noted therein, a defendant is not aggrieved by a precautionary medical award until 'a claim for some specific treatment is made, in which event petitioner will have its day in court to present any legal or factual defense it may have against such a claim.' (22 CCC 15, 17)."

■ A decision of the Board either denying or granting the petition for reconsideration must "state the evidence relied upon and specify in detail the reasons for the decision." (Lab. Code, § 5908.5; *City of Santa Ana* v. *Workers' Comp. Appeals Bd.* (1982) 128 Cal.App.3d 212, 219 [180 Cal.Rptr. 125].) And if the evidence relied upon and the reasons stated for the decision do not support it, the decision must be annulled. (*Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 893, 898 [83 Cal.Rptr. 591, 464 P.2d 47]; *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 406-407 [71 Cal.Rptr. 678, 445 P.2d 294]; *Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633]; *City of Santa Ana* v. *Workers' Comp. Appeals Bd., supra,* 128 Cal.App.3d 212.)

■ Although the considered expert opinion of one physician may constitute substantial evidence to support a determination of the Board (*Smith* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 639

---

[2] As counsel for the hospital correctly observes, this statement of the WCJ indicates an apparent belief on his part that every psychiatric disability, even though permanent and stationary, necessarily requires further medical treatment.

[3] It is abundantly clear from the fact Dr. Jeffries' report resulted from a psychiatric evaluation and the WCJ's treatment of the opinions of Dr. Franks and Dr. Jeffries as being in conflict, that the "further medical treatment" referred to by the WCJ in his order had reference to "further" psychiatric or psychological treatment in respect to the psychiatric disability.

[83 Cal.Rptr. 208, 463 P.2d 432]; *City of Santa Ana* v. *Workers' Comp. Appeals Bd., supra,* 128 Cal.App.3d at pp. 218-219), a medical report which is outdated and not based upon the essential facts extant at the time of the Board's decision does not constitute substantial evidence. (*Jones* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 476, 479-480 [67 Cal.Rptr. 544, 439 P.2d 648]; *Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656].)

■ Here Dr. Jeffries' report was made December 11, 1979, based on examinations of the applicant on November 12 and 28, 1979. It is clear from Dr. Jeffries' report that he did not then consider the applicant's psychiatric disability permanent and stationary but, rather, believed it would improve with treatment. His recommendation that "[t]reatment should be provided" was a concomitant of his opinion that the condition was not permanent and stationary. He did not recommend "further treatment" but, rather, "treatment." An opinion that a condition which is not permanent and stationary necessitates treatment is barely relevant to the disparate issue of whether, some two and one-quarter years later, a condition that is permanent and stationary necessitates "further medical treatment." Much less does such opinion constitute substantial evidence of a need for further medical treatment with respect to the permanent and stationary condition.

Dr. Jeffries' report being insufficient to support the Board's determination and the Board having rejected the opinion of Dr. Franks, there is a rather apparent need for further proceeding to receive additional evidence on the issue of applicant's need for further medical treatment.[4]

■ We do not agree with the suggestion of the Board that Hospital is not aggrieved by what the Board terms the "precautionary . . . award" of further medical treatment. In the first place the Board is not authorized to make "precautionary" awards not based on evidence; an award of further medical treatment must be based on substantial evidence as any other award of benefits. If no present need is shown to exist and a need later appears, a petition to reopen would be the appropriate procedure.

Secondly, in the face of the award of further medical treatment, we do not agree that Hospital would be entitled to fully litigate the question of need for further medical treatment if and when some specific treatment were requested. The award would have finally determined that the psychiatric injury resulted in a need for further medical treatment, and only the need for the specific medical

---

[4]There was a report from Dr. Ascher with respect to the orthopedic disability indicating a need for further medical treatment of the orthopedic condition. However, that report was made even earlier than the report of Dr. Jeffries. More importantly, neither the WCJ nor the Board referred to or relied on Dr. Ascher's report.

treatment requested would be at issue in any subsequent proceeding, that is, the only question would be whether the specific medical treatment requested was reasonably necessary to cure or relieve the effects of the injury. (See *City of Anaheim* v. *Workers' Comp. Appeals Bd.* (1982) 128 Cal.App.3d 200, 207 [180 Cal.Rptr. 132].) As Hospital points out, if the order stands and Hospital should decide to contest the need for specifically requested treatment on the ground the injury did not result in a need for further medical treatment, it would be met by a claim of res judicata and the threat of a 10 percent penalty for unreasonable delay in providing benefits.

It is true that in *Truck Ins. Exch.* v. *Industrial Acc. Com.* (1957) 147 Cal. App.2d 460, 462 [305 P.2d 55], the court made the statement quoted by the Board in its order. However, it appears to us from the court's earlier discussion that the quoted statement was a dictum. In any event, whether holding or dictum, we do not agree with the statement. We held to the contrary in essence in *City of Anaheim* v. *Workers' Comp. Appeals Bd., supra,* 128 Cal.App.3d at page 207, filed January 25, 1982.

Board's order dated May 6, 1982, denying Hospital's petition for reconsideration is annulled, and the case is returned to the Board for redetermination of the issue of applicant's need for further medical treatment.

Morris, P. J., and Trotter, J., concurred.