[No. S082111. July 10, 2000.]

RONNIE BARNES, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, EMPLOYMENT
DEVELOPMENT DEPARTMENT et al., Respondents.

**COUNSEL**

Ronnie Barnes, in pro. per.; Joseph V. Capurro; Law Office of Marilee Jones-Cofield and Marilee Jones-Cofield for Petitioner.

Joseph V. Capurro and William A. Herreras for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

Richard A. Krimen, Robert W. Daneri and Don E. Clark for Respondents Employment Development Department and State Compensation Insurance Fund.

Robert E. Shannon, City Attorney, and Susan C. Oakley, Deputy City Attorney, for Respondent City of Long Beach.

No appearance for Respondent Workers' Compensation Appeals Board.

**OPINION**

**WERDEGAR, J.**—An employee suffers a compensable industrial injury and is granted a precautionary award for future medical care. More than five years later, the employer petitions to terminate its future liability for such care, contending the employee's continuing physical problems are not the result of the original industrial injury. We address in this case whether the employer's petition to terminate its liability for potential future medical care is barred by Labor Code[1] section 5804, which states that "[n]o award of compensation shall be rescinded, altered, or amended after five years from the date of the injury . . . ."

We conclude section 5804 deprives the Workers' Compensation Appeals Board (Board) of jurisdiction over an employer's petition to terminate future liability if the petition is filed more than five years from the date of the injury. The Board retains, however, continuing jurisdiction pursuant to section 5803 to adjudicate an employer's claim that a particular medical treatment is unjustified or not attributable to the original injury.

FACTS

Applicant Ronnie Barnes worked for defendant Employment Development Department (EDD) as an employment claims assistant when, on March

---

[1]All further statutory references are to the Labor Code unless otherwise stated.

12, 1981, he fell on the job and sustained a compensable industrial injury to his right knee and back. In a June 1, 1982, decision (No. LBO 115442), the Board concluded the injury caused a 6.25 percent permanent disability.[2] In addition, the Board's decision stated, "[t]he applicant may need further medical treatment and it will be so awarded providing that the applicant first make demand upon the defendant. This does not include treatment for the Paget's Disease." (Underscoring in original.)[3]

In 1983 or 1984, applicant apparently petitioned to reopen his case for a reason not disclosed in the record and, separately, for compensation for a psychiatric injury. The Board denied both petitions in a joint opinion issued on January 26, 1984, although it assessed a 10 percent penalty against EDD and its insurer, the State Compensation Insurance Fund (SCIF) (see *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1209 [77 Cal.Rptr.2d 528, 959 P.2d 1204]; § 5814), for an unspecified delay in making payments.

In 1992, applicant claims to have filed a declaration of readiness because EDD allegedly was failing to comply with the award provisionally granting him future medical benefits. (Neither applicant nor the record of proceedings explains the basis for EDD's alleged failure to comply with the provisional award.) The parties thereafter agreed to have applicant examined by an agreed medical examiner (AME). Dr. Earl Feiwell was chosen with applicant's consent.

Dr. Feiwell's November 6, 1995, report concluded that applicant's continuing back and knee pain was not traceable to his 1981 injury. "[Applicant] shows no degenerative changes relative to any of the disc levels. In essence, there is no evidence of any ongoing degenerative problems or suggested problems of injury to any of the lumbar discs as related to that injury of 14 years ago. [¶] What is seen, however, is the Paget's disease that has occurred

---

[2]The 1982 finding and award were not made part of the record but were included as an exhibit to applicant's petition for a writ of review in the Court of Appeal. As did that court, we take judicial notice of them. (Evid. Code, §§ 452, subd. (d), 459.)

[3]Applicant was found to suffer from Paget's disease, "[a] disease of various bones of the body, especially of the long bones and the bones of the pelvis, i.e., the hip bones. There is a peculiar combination of loss of bone tissue and overgrowth of bone tissue, resulting in deformities. Another characteristic change is the transformation of the blood-forming marrow within the bones into a non-functional fibrous tissue." (4 Schmidt, Attorneys' Dict. of Medicine (1999) p. P-8.) Symptoms may not manifest themselves, but "[w]hen symptoms are present, they include pain, stiffness, deformity, fatigability, headache, and, occasionally, hearing impairment. There may be bowing of the leg or thigh. Compression of nerves can cause paralysis. There may also be some form of heart failure and pathologic fractures." (*Ibid.*) The cause of the disease was nonindustrial and preexisted the 1981 injury.

throughout the sacrum and in the right iliac area and extending down into the ischial tuberosity."[4] Dr. Feiwell concluded: "[Applicant's] primary lower back problem at this time is related to his Paget's disease and Paget's disease treatment is appropriate. In regard to physical therapy, there is no therapy indicated and certainly none in relationship to the 1981 injury. [¶] No medication is particularly indicated relative to the 1981 injury. [¶] As stated, current treatment is most probably related to his Paget's disease and pain resulting from that. I see no basis at this time for any belief that the trauma that occurred in 1981 has resulted in an ongoing problem requiring treatment, or that his present treatment since 1989, could in any way be related to the 1981 trauma." Dr. Feiwell admitted, however, that applicant's voluminous medical records had not yet arrived, so his diagnosis was based on his own observations and discussion with the applicant, and review of the reports of one previous doctor.

Dr. Feiwell prepared a second report on June 17, 1996, after reviewing a "24 inch stack of [applicant's] medical records." After a thorough review of applicant's medical history, including evidence of a back problem that preexisted the 1981 industrial injury, Dr. Feiwell addressed this question: "Is there any further treatment reasonable and necessary to cure or relieve the effects of the applicant's 1981 injury to his right knee and back?" He answered: "I would state absolutely no. This man's only complaint problems are undoubtedly coming from his Paget's disease and this is based on the fact that he has undergone multiple injuries to his body without any described increase in his lower back pain." Further, "[i]t is my opinion that all of the care that is necessary for this man's back and knee is totally related to his Paget's [disease] problems, which are non-industrial and which would be present today, absent any of the industrial injuries described."

Dr. Feiwell was later deposed but did not alter his opinion or conclusions.

On December 15, 1995, EDD and SCIF filed a "Petition to Terminate Liability for Medical Benefits." The petition was based largely on the medical conclusions of Dr. Feiwell's November 6, 1995, report.

A hearing on the petition to terminate liability was held on March 5, 1998, before Workers' Compensation Referee (WCR) Louie. She issued her supplemental findings and order on May 21, 1998, granting EDD and SCIF's petition to terminate their liability for future medical treatment in case No.

---

[4]The ischial tuberosity is "[a] roughened elevated area of the back part of the ischium (the back and lower part of the hip bone) . . . . Because the body rests upon it in the sitting posture, it is known as the sitting bone." (3 Schmidt, Attorneys' Dict. of Medicine, *supra*, at p. I-192, italics omitted.)

LBO 115442. In her joint opinion on decision, issued the same day, WCR Louie stated her decision to grant EDD and SCIF's petition to terminate liability was based on Dr. Feiwell's medical reports, and that "any treatment [applicant] currently needs is due to his Paget's disease which affects his hip and left leg."

Applicant sought reconsideration, specifically alleging the WCR's decision violated section 5804's five-year time limit for "rescind[ing], alter[ing], or amend[ing]" an award of compensation. The WCR denied reconsideration, apparently concluding that despite the five-year limitation set forth in section 5804, applicant's original 1982 award of future medical benefits contemplated the Board's continuing jurisdiction over that award, including jurisdiction to hear a petition to terminate liability. The Board also denied reconsideration, citing the reasons stated in the WCR's report as well as a treatise on California workers' compensation law. (1 St. Clair, Cal. Workers' Compensation Law and Practice (5th ed. 1996) Medical Benefits, § 9.9(8)(b), pp. 619-620 (hereafter St. Clair).) The Court of Appeal affirmed, and we granted review.

## DISCUSSION

Section 4600 provides in pertinent part that "[m]edical, surgical, chiropractic, acupuncture, and hospital treatment, . . . that is reasonably required *to cure or relieve* from the effects of the injury shall be provided by the employer." (Italics added.) Once an applicant's disability has become permanent and stationary, it may be possible to predict he or she will require medical treatment in the future as a result of an industrial injury, even if there is no present manifestation of symptoms. In such circumstances, the Board can, in addition to a general award of present medical benefits, authorize what is known as a precautionary or provisional award of future medical treatment. (*Kauffman v. Workmen's Comp. App. Bd.* (1969) 273 Cal.App.2d 829, 838 [78 Cal.Rptr. 620] (*Kauffman*); see also *Fidelity etc. Co. v. Dept. of Indus. Relations* (1929) 207 Cal. 144 [277 P. 492] (*Fidelity*); *Llewellyn Iron Wks. v. Indus. Acc. Com.* (1933) 129 Cal.App. 449 [18 P.2d 975]; 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed., Tancor edit., 1999) The Award and Its Enforcement, § 27.01[3], p. 27-7 (hereafter Hanna); 1 Herlick, Cal. Workers' Compensation Law (5th ed. 1999) Medical Treatment, § 4.15, p. 4-13 (hereafter Herlick).) "Under Labor Code, section 4600 the board has power to make awards for . . . future medical treatment . . . . In an appropriate case the board can and should specifically prescribe the medical care and treatment which must be furnished in addition to making a general award." (*Kauffman, supra,* at p. 838, italics omitted.)

The possibility of open-ended liability for medical treatment, though consistent with section 4600's mandate to employers to pay for medical treatment "to cure or relieve" the effects of an industrial injury, stands in contrast to the legislative concern, expressed in the Labor Code, for "certainty and finality in the determination of compensation benefit obligations." (*Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 299 [285 Cal.Rptr. 86, 814 P.2d 1328].) Thus, " '[i]t is important . . . that the overall cost of [workers'] compensation insurance . . . be ascertainable with reasonable certainty in order that business operations may be adjusted accordingly . . . .' " (*Ibid.*, first ellipsis and second brackets in original.)

The burden on employers of potentially open-ended liability for future medical treatment is somewhat ameliorated by time limits set forth in the Labor Code. Thus, an applicant must generally file an application for normal (medical or disability) benefits within one year of whichever of the following "results in the longest period: (a) the date of the injury; (b) the date of the last indemnity payment for temporary or permanent disability; or (c) the date of the last furnishing of any medical or hospital benefits." (*Sanchez v. Workers' Comp. Appeals Bd.* (1990) 217 Cal.App.3d 346, 352 [266 Cal.Rptr. 21]; § 5405.) In addition, as discussed more fully below, section 5804 sets forth a five-year limitation period for "rescind[ing], alter[ing], or amend[ing]" an award of compensation.

■ Awards of future medical benefits are also rendered more certain by the rule that such awards must be based on substantial evidence. Thus, for a precautionary award, an applicant must present substantial evidence to demonstrate he or she is likely to need medical treatment in the future as a result of a permanent disability resulting from an industrial injury. (*Fairview State Hospital v. Workers' Comp. Appeals Bd.* (1982) 138 Cal.App.3d 595, 600 [188 Cal.Rptr. 51]; 1 Eskenazi et al., Cal. Civil Practice—Workers' Compensation (1993) Medical Treatment, § 2:5, pp. 8-9; 2 Hanna, *supra*, § 27.01[3], p. 27-7.) "[A] so-called 'precautionary award' of future treatment, absent precise evidence, is invalid." (1 Herlick, *supra*, § 4.15, p. 4-13.)

■ With that background in mind, we turn to the question presented in the instant case, cognizant of the rule that we are not bound by the Board's decision on questions of law, but instead undertake de novo review. (*Dimmig v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864-865 [101 Cal.Rptr. 105, 495 P.2d 433].)

■ The Board's 1982 decision stated, "[t]he applicant may need further medical treatment and it will be so awarded providing that the applicant first

make demand upon the defendant. This does <u>not</u> include treatment for the Paget's Disease." (Underscoring in original.) The Board thus clearly awarded applicant future medical benefits, subject to two express limitations: applicant must notify defendant EDD of the need for treatment, and applicant is expressly not entitled to treatment for his preexisting Paget's disease. Although the record of the 1982 proceeding is not before us, the justification for a provisional award of future medical benefits may be surmised: injuries to one's lower back, as applicant suffered, tend to go into remission, only to flare up in the future, resulting in a new disability flowing from the old injury.

On December 15, 1995, defendants EDD and SCIF jointly filed the petition to terminate liability for medical benefits. The petition was obviously filed more than five years from applicant's March 12, 1981, injury. Applicant contends the Board was without jurisdiction to adjudicate the petition because it was filed more than five years from the day of the injury. Applicant's argument is well taken.

Section 5804 provides in pertinent part: "No award of compensation shall be rescinded, altered, or amended after five years from the date of the injury except upon a petition by a party in interest filed within such five years and any counterpetition seeking other relief filed by the adverse party within 30 days of the original petition . . . ." Construing the statutory language in a plain, commonsense manner (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175]), we find EDD and SCIF's petition to terminate their liability for future medical benefits, on its face, is a petition to "rescind[]" the 1982 award of future medical benefits and thus falls squarely within the terms of section 5804.

This conclusion is consistent with the purpose of the limitation period to foster both certainty and finality in the law. For example, an applicant may believe a newly manifested disability is caused by a previous industrial injury for which compensation had been awarded. Nevertheless, the applicant's ability to reopen the claim ceases five years from the date of the injury (§ 5410).[5] In symmetrical fashion, section 5804 generates some repose for the injured employee by terminating the employer's ability to reopen a previously adjudicated claim once five years from the date of the original

---

[5]Section 5410 provides in pertinent part: "Nothing in this chapter shall bar the right of any injured worker to institute proceedings for the collection of compensation . . . within five years after the date of the injury upon the ground that the original injury has caused new and further disability . . . ."

injury have passed. Thus, although an employer may petition to terminate a provisional award for future medical benefits by legitimately claiming new information, once five years have passed the Board loses jurisdiction to hear such a claim.

There are exceptions to this rule. The Board may, for example, rescind an award more than five years from the date of the injury if the petition seeking rescission was filed before the five years had elapsed. (§ 5804.) In the case of insidious, progressive diseases such as asbestos-related lung disease, the Board also may reserve jurisdiction on the question of permanent disability and continue its jurisdiction beyond the five-year period. (*General Foundry Service v. Workers' Comp. Appeals Bd.* (1986) 42 Cal.3d 331 [228 Cal.Rptr. 243, 721 P.2d 124].)

More important for our purposes, the Board retains jurisdiction, even after five years, to determine whether a *particular* medical treatment, claimed by an applicant who previously had been granted a provisional award of future medical benefits, is justified to treat his industrial injury. (§ 5803 ["The appeals board has continuing jurisdiction over all its orders, decisions, and awards"].) That the Board retains jurisdiction over such disputes highlights the difference between an order *rescinding* an award and one that merely *enforces* an award. Thus, "[a]n order enforcing an award for medical and hospital treatment is in the ordinary case an order for reimbursement of self-procured treatment and such an order is clearly neither a rescission, an alteration nor an amendment of the award. . . . [T]he power of the [Board] to enforce such an award is not limited by the five-year period for rescinding, altering or amending an award." (*Kauffman, supra,* 273 Cal.App.2d at pp. 838-839.)

The distinction *Kauffman* draws between enforcement and rescission is consistent with precedent. In *Fidelity, supra,* 207 Cal. 144, the Department of Industrial Relations (predecessor to the Board) ordered the defendant insurance carrier to pay for medical treatment for the employee past the statutory limit, then 240 weeks. (*Id.* at pp. 145-146.) The defendant resisted, arguing the department lacked the power to issue any orders once 240 weeks had elapsed. (*Id.* at p. 152.) This court disagreed, explaining: "Would an order of the department . . . directing that [the insurance company] pay to said third person the amount expended for such treatment be either a rescission, an alteration or amendment of the award of compensation, and, therefore, in violation of section 20 (d) of said act [the predecessor to section 5804]? We think not. Whatever future orders the department may be required to make in order to enforce said award will not in any way change or

alter the terms thereof. The award itself will stand as made by the department." (*Fidelity, supra*, at p. 153; see also *Llewellyn Iron Wks. v. Indus. Acc. Com., supra*, 129 Cal.App. at pp. 452-453 [citing *Fidelity* with approval].)

Recognizing the difference between a petition to rescind an award and one simply to enforce an award, we conclude EDD and SCIF's petition to terminate their liability seeks to rescind the prior 1982 award and therefore falls within the five-year time limit set forth in section 5804. The petition asserts that "applicant is no longer in need of medical treatment to cure or relieve [him] from the effects of his injury" and "requests that [EDD and SCIF's] liability for further medical treatment . . . be terminated." The petition thus does not respond to a specific demand by applicant for reimbursement for self-procured medical treatment allegedly required as a result of the 1981 employment-related injury to his back and right knee. Instead, it is EDD and SCIF's position that, as a result of the progression of applicant's Paget's disease, no further disability *could be* attributable to the 1981 injury. Thus, rather than arguing the necessity, justification or efficacy of a particular course of medical treatment, the petition to terminate attacks the validity of the Board's 1982 determination that "[t]he applicant may need further medical treatment and it will be so awarded . . . ." Stated differently, EDD and SCIF argue they have new evidence, in the form of Dr. Feiwell's reports, that applicant will no longer need further medical treatment for any future disability that can be attributable to the 1981 injury. Pursuant to section 5804, however, the time for challenging the validity of the 1982 order on that ground expired five years after the date of the injury.

Our view is consistent with that of one commentator, who states: "If the Board has awarded further medical treatment, an employer or insurer can be required to furnish treatment beyond the five-year period from the date of an employee's injury unless a Board order terminates liability. To obtain an order terminating liability for medical treatment *the employer or insurer must file a petition within five years of the injury* and support the request with a medical report." (Swezey, Cal. Workers' Compensation Practice (Cont.Ed.Bar 3d ed. 1985) Supplemental Proceedings, § 12.24, p. 468, italics added.)

Although EDD and SCIF advance a number of arguments against this conclusion, none is persuasive. First, EDD and SCIF argue section 5803 provides for the Board's continuing jurisdiction of "all its orders, decisions, and awards made and entered under the provisions of this division," including the power to "review, grant or regrant, diminish, increase, or terminate" an award. This continuing jurisdiction of the Board to "review . . . or

terminate" its awards is expressly subject, however, to being exercised "within the limits prescribed by this division." (§ 5803.) The five-year limitation period set forth by section 5804 is in the same division as section 5803. Section 5803's continuing jurisdiction, then, is subject to section 5804's limitation period.

Second, EDD and SCIF rely on the views of Workers' Compensation Judge St. Clair (retired), who states in his treatise that "[a] defendant subject to an award of further medical treatment may petition the Board to terminate the medical award based upon the allegation that applicant is no longer in need of further medical treatment for the injury." (1 St. Clair, *supra*, Medical Benefits, § 9.9(8)(a), p. 618.) This statement, of itself, is not inconsistent with our conclusion that a petition to terminate must be filed within five years of the injury.

Judge St. Clair continues, however, concluding the five-year limitation period set forth in section 5804 does not apply to petitions to terminate future medical treatment. (1 St. Clair, *supra*, Medical Benefits, § 9.9(8)(b), pp. 619-620.) In support, he relies on authority, discussed *ante*, recognizing that the Board retains jurisdiction beyond five years to enforce an award. (*Kauffman*, *supra*, 273 Cal.App.2d 829; *Fidelity*, *supra*, 207 Cal. 144; *Llewellyn Iron Wks. v. Indus. Acc. Com.*, *supra*, 129 Cal.App. 449.) In reaching this conclusion, Judge St. Clair fails to appreciate the difference between a petition to enforce an award, over which the Board retains continuing jurisdiction pursuant to section 5803, and a petition to rescind or terminate an award, which is subject to the five-year limitation period of section 5804. We thus find Judge St. Clair's views on this point unpersuasive.

Third, EDD and SCIF echo the argument of the Court of Appeal, which reasoned the Board's original 1982 decision that applicant "may need" future medical treatment presupposes the opposite, i.e., that he "may not need" such treatment, and that the employer has a right equal to the employee to enforce the award. We agree. To the extent EDD and SCIF seek to contest the necessity of a particular course of treatment for which applicant seeks reimbursement, they are free to do so. The Board, as previously indicated, retains continuing jurisdiction over such disputes pursuant to section 5803. We observe that EDD and SCIF, in support of their petition to terminate, presented substantial evidence applicant suffers from a bone disease that is the probable cause of any discomfort he is presently experiencing. Such evidence, if accepted by the Board, would support denial of reimbursement for two reasons. First, applicant's original 1982 award of

future medical benefits expressly excluded "treatment for . . . Paget's Disease." Second, even if the original award had not included the proviso concerning Paget's disease, the Board in any event retains continuing jurisdiction pursuant to section 5803 to enforce an award. EDD and SCIF are, of course, free to introduce Dr. Feiwell's reports in an attempt to convince the Board that a present demand by applicant for reimbursement should be denied as falling outside the scope of the 1982 provisional award.

We reject, however, EDD and SCIF's assertion that a petition to terminate a provisional award based on evidence the provision (or condition) no longer exists—here, a need for future medical treatment—is a petition to *enforce* the award. Although the 1982 award states that applicant "may need" future medical treatment, such phraseology does not entitle EDD and SCIF indefinitely to litigate the correctness of that decision. Section 5804 supplies an outer limit on such legal attacks and, accordingly, both generates repose for the injured employee and fosters certainty for the employer.

Finally, EDD and SCIF argue that permitting them to terminate their liability, even if their petition was filed more than five years after the injury, "promotes the public policy of certainty and finality and serves the constitutional mandate that the Board accomplish substantial justice in all cases . . . ." (See Cal. Const., art. XIV, § 4.) As we have explained, just the opposite is true. By setting an outer limit of five years both for the employer to challenge an award (§ 5804), and the injured employee to reopen an old claim (§ 5410), the legislative scheme fosters certainty and finality for both sides. By providing that the Board retains continuing jurisdiction past five years to *enforce* an award, however, including jurisdiction to hear an employer's claim that a particular treatment is unnecessary or otherwise unjustified by the terms of the original award, the Legislature has created a mechanism whereby employers and insurers can have their day in court as well. We perceive no substantial injustice in this scheme.

CONCLUSION

We conclude the Court of Appeal erred when it affirmed the Board's denial of reconsideration. Applicant correctly argued the petition to terminate liability for medical benefits was subject to section 5804's limitation that "[n]o award of compensation shall be rescinded, altered, or amended after five years from the date of the injury . . . ." Applicant's victory may be a Pyrrhic one, however, for if and when he makes a demand for reimbursement, EDD and SCIF remain free to introduce Dr. Feiwell's reports to dispute the validity of the claim.

The decision of the Court of Appeal is reversed.[6]

George, C. J., Mosk, J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.

---

[6]Because we limited the issue on review to the question of the applicability of section 5804, we decline to address applicant's further contentions that the selection of Dr. Feiwell as the AME violated section 4062.1 and that Dr. Feiwell should have reviewed all the medical reports.