[No. C043584. Third Dist. Oct. 30, 2003.]

GRANITE CONSTRUCTION COMPANY et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
CARL D. McREYNOLDS, Respondents.

1454

**COUNSEL**

Law Offices of Brunn & Flynn and Timothy T. Flynn for Petitioners.

Vincent Bausano for Respondent Workers' Compensation Appeals Board.

No appearance for Respondent Carl D. McReynolds.

**OPINION**

**HULL, J.**—Petitioners Granite Construction Company (Granite) and RSKCo seek review of a decision of the Workers' Compensation Appeals Board (Board) awarding additional benefits to respondent Carl D. McReynolds (McReynolds) for new and further disability. Petitioners contend McReynolds did not submit a timely claim for new and further disability; thus the Board lacked jurisdiction to issue the award. We agree and annul the Board's decision.

### FACTS AND PROCEEDINGS

On September 12, 1990, McReynolds injured his back and legs while working as a cement mason for Granite. At the time, Granite's workers' compensation benefits were adjusted by RSKCo. On August 19, 1991, McReynolds filed a claim with the Board (case No. STK 0086967).

On August 28, 1991, McReynolds sustained injury to his lower back while working as a cement mason for D.S.S. Engineering (DSS). DSS was insured for purposes of workers' compensation by Liberty Mutual Insurance Company (Liberty Mutual). McReynolds filed a claim with the Board (case No. STK 0096339).

On February 23, 1993, McReynolds moved to consolidate the two cases.

On or about March 26, 1993, the cases were settled by stipulation of the parties. The stipulation provided, among other things, that McReynolds

suffered 29 percent permanent disability in case No. STK 0086967, for which he was entitled to total payments of $16,170, and 17 1/2 percent permanent disability in case No. STK 0096339, for which he was entitled to $8,435. The stipulation also allocated costs between the two employers for rehabilitation and future medical care. It provided that RSKCo would pay Liberty Mutual 50 percent of all vocational rehabilitation costs, in the amount of $15,401, and would pay $2,500 for future medical care. Liberty Mutual would assume responsibility for all future medical care. The court entered an award in accordance with the stipulation.

By letter dated August 23, 1993, McReynolds complained to the Board that Liberty Mutual was refusing to pay for medical treatment. The letter indicated that McReynolds visited Dr. Moris Senegor on August 10, 1993, because of "severe pain," but the insurer would not authorize an "MRI scan and injections or possible surgery" to relieve the pain. McReynolds sought reimbursement for the doctor visits and the MRI. Attached to the letter was a report by Dr. Senegor.

On May 9, 1996, McReynolds filed a petition to reopen both cases. Attached to the petition was a document entitled "APPLICATION FOR NEW AND FURTHER DISABILITY," claiming disability greater than that established by a December 5, 1994, report by Dr. Senegor. The only parties named as defendants in the two documents were DSS and Liberty Mutual.

On February 26, 1998, DSS and Liberty Mutual filed a petition to join Granite and RSKCo as party defendants. Joinder was ordered on or about March 5, 1998.

On August 21, 2001, the workers' compensation judge (WCJ) issued his findings, award and order. The WCJ concluded that case No. STK 0086967 had been reopened properly and that McReynolds had sustained new and further disability. The WCJ allocated 62 percent of the additional disability to "Granite by RSKCo" and 38 percent to Liberty Mutual.

Granite and RSKCo filed a petition for reconsideration, asserting that McReynolds failed to reopen case No. STK 0086967 within five years of the injury as required by statute. The Board granted reconsideration. However, the Board ultimately upheld the decision of the WCJ. The Board adopted and incorporated the report and recommendation of the WCJ, which explained that the August 23, 1993, letter from McReynolds was timely and sufficient to reopen case No. STK 0086967.

Granite sought, and we issued, a writ of review.

## DISCUSSION

Granite contends the Board acted in excess of its jurisdiction, because McReynolds did not file a timely petition to reopen case No. STK 0086967. We agree.

■ Generally, appellate review of a Board decision is limited to the question whether, under applicable legal principles, the Board's conclusions are supported by substantial evidence in light of the entire record. (*Kerley v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 226 [93 Cal.Rptr. 192, 481 P.2d 200]; *Mote v. Workers' Comp. Appeals Bd.* (1997) 56 Cal.App.4th 902, 909 [65 Cal.Rptr.2d 806].) In this matter, however, the facts are essentially undisputed, and the question is the legal significance of those facts. ■ Where the facts are not in dispute, application of the legal rules to those facts is a question of law subject to de novo review. (*Martinez v. Workers' Comp. Appeals Bd.* (2000) 84 Cal.App.4th 1079, 1084 [101 Cal.Rptr.2d 406].)

■ Labor Code section 5410 establishes a five-year statute of limitations for claims of further disability. It reads, in relevant part: "Nothing in this chapter shall bar the right of any injured worker to institute proceedings for the collection of compensation . . . within five years after the date of the injury upon the ground that the original injury has caused new and further disability . . .. The jurisdiction of the appeals board in these cases shall be a continuing jurisdiction within this period. . . ." (Further undesignated section references are to the Labor Code.) Section 5410 is jurisdictional (cf. *Selden v. Workers' Comp. Appeals Bd.* (1986) 176 Cal.App.3d 877, 882 [222 Cal.Rptr. 450]) and bars the reopening of a workers' compensation case more than five years after the date of injury (*Newton v. Workers' Comp. Appeals Bd.* (1993) 17 Cal.App.4th 147, 155 [21 Cal.Rptr.2d 146]).

In his report and recommendation on petition for rehearing, the WCJ acknowledged that McReynolds filed a formal petition to reopen both cases on May 9, 1996. This was more than five years after the September 12, 1990, injury in case No. STK 0086967. However, the WCJ relied on McReynolds's 1993 letter and the attached report by Dr. Senegor. Finally, the WCJ noted that Granite had participated in the proceedings since March 1, 1999.

In its opinion and decision after reconsideration, the Board affirmed the WCJ's decision. The Board adopted and incorporated the reasoning of the WCJ and further explained: "[E]ven though applicant's letter to the Presiding WCJ, received September 28, 1993, did not seek all benefits possible, we are persuaded that it preserved the Appeals Board's jurisdiction to consider all benefits to which applicant is entitled." According to the Board, McReynolds

"made a broad request for additional workers' compensation benefits within five years of the date of injury."

In reaching the foregoing conclusion, the Board relied on two appellate decisions, *Bland v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 324 [90 Cal.Rptr. 431, 475 P.2d 663] and *Blanchard v. Workers' Comp. Appeals Bd.* (1975) 53 Cal.App.3d 590 [126 Cal.Rptr. 187]. In *Bland,* the employee injured his knee on December 16, 1963, and was awarded temporary and permanent disability benefits. (*Bland v. Workmen's Comp. App. Bd., supra,* 3 Cal.3d at pp. 326–327.) On August 23, 1968, the employee filed a petition to reopen the case, requesting " 'that the Appeals Board take such steps as may be necessary to a redetermination of this matter and for an increase in the benefits payable to petitioner on account of said permanent disability.' " (*Id.* at p. 327.) The WCJ awarded additional permanent disability benefits. However, because of a worsening condition that required surgery, the employee petitioned for reconsideration, claiming his condition was not yet permanent. On reconsideration, the Board agreed and awarded the employee temporary disability benefits. (*Ibid.*) The insurer petitioned for reconsideration, claiming the Board lacked jurisdiction to award benefits for temporary disability because this had not been requested in the original petition. The Board agreed and reversed itself. (*Id.* at p. 328.)

The Supreme Court annulled the Board's decision. First, the court noted the language of the petition to reopen was sufficiently broad to encompass temporary disability. According to the court, the language requesting that the Board " 'take such steps as may be necessary to a redetermination of this matter' invite[d] the [B]oard to enter a jurisdictional area of unlimited expanse . . . ." (*Bland v. Workmen's Comp. App. Bd.,* supra, 3 Cal.3d at p. 331.) The court explained: "The reference to 'permanent disability' constitutes an additional and further request, joined with the prior prayer by the word 'and'; it does not *restrict* the prior, and broader, prayer." (*Ibid.*) Finally, the court summarized: "In conclusion, 'we do not believe that awkwardness in allegation should constrict a worker's right to compensation. In many cases before the [Board], applicants are not represented by counsel and lack advice as to procedural niceties. The applicant's claim is entitled to adjudication upon substance rather than upon formality of statement.' " (*Id.* at p. 334.)

In *Blanchard,* the employee sustained injury to his heart and circulatory system between November 19, 1962, and May 26, 1969, and was awarded permanent disability benefits. Shortly before the expiration of five years from the last day of injury, the employee filed a petition for increased benefits, alleging: " 'Since the issuance of such Findings and Award [July 21, 1970], petitioner is informed and believes that there has been a change in the condition of applicant. Petitioner will file herein a medical evaluation report

of applicant's condition in support of his petition herein at a later date.' " (*Blanchard v. Workers' Comp. Appeals Bd., supra,* 53 Cal.App.3d at p. 592.) However, the medical report was not filed until several months after expiration of the five-year period. (*Id.* at p. 593.) The Board denied relief, concluding that the petition to reopen failed to set forth the facts relied on to show additional disability. (*Id.* at p. 594.)

The Court of Appeal annulled the Board's decision. The court noted that the employee's petition was entitled " 'Petition To Reopen For Increased Disability Benefits,' " and despite absence of supporting facts, the employer could not have been misled. (*Blanchard v. Worker's Comp. Appeals Bd., supra,* 53 Cal.App.3d at p. 594.) The court concluded that the petition was sufficient to maintain Board jurisdiction and allow for further amendment. According to the court: " 'The statute of limitations will not bar amendment of an application where the original application was timely and the amendment does not present a different legal theory or set of facts constituting a separate cause of action.' [Citation.] In civil cases it is the rule that the statute of limitations will not bar an amendment to the complaint so long as the amendment does not introduce a wholly different cause of action. [Citations.] In a workers' compensation proceeding, in which much less formal rules of pleading are observed, the rules should be at least as liberal as in civil cases generally." (*Id.* at p. 595.)

These cases are inapposite. In both, the employee filed a petition within the five-year period that expressly claimed further disability. In *Bland,* the petition was allegedly defective in failing to request, in addition to permanent disability benefits, temporary disability benefits. However, the petition was sufficiently broad to encompass all types of benefits appropriate to the employee's further disability. In *Blanchard,* the petition claimed further disability but failed to attach a medical report setting forth the factual basis for the claim. In neither case could the defendants have been misled by what was being sought.

In the present matter, the only thing submitted by McReynolds within the five-year period was a letter sent to the presiding WCJ and an attached medical report. The letter read:

"On August 10, 1993 I went to my chiropractor because of severe pain. On my arrival I was informed that my worker [*sic*] Laura Durham of Liberty Mutual refused to okay anymore visits. I returned home[,] called her and she refused to talk with me because I wanted to record our conversation and she insist [*sic*] I still have an attorney which I don't as of 3/26/93.

"She stopped my checks at one time because I would not sign a contract I didn't agree with. On [s]everal occasions thru phone conversations her

attitude toward me was terrible. She has said 'Screw You Carl' in many conversations. I have tried to work things out with her but she refuses to talk to me if I record. I only do it for my records.

"On 8/10/93 I had an appointment with Dr. Moris Senegor, a neurosurgeon which I paid for out of my own pocket, because I was in severe pain and he worked wonders on my wife's neck injury. He contacted Laura Durham at Liberty Mutual so she could okay the MRI scan and injections or possible surgery to relief [sic] some of my pain. She again refused medical. The MRI scan I had was three years old.

"I have life time open medical and do not understand why she is being so hesitant.

"Liberty Mutual sent me to school to be a construction estimator. I tried to no avail to get a job. I took what little proceeds of the settlement I had left to try and get my trenching business going again. I have to feed my family somehow.

"Laura is under the impression I reinjured myself doing so. I did not. My two sons, wife and friends are helping me because I can't do much myself. I don't understand what she wants me to do. I want my monies back that I spent for the MRI and the two doctors visits I paid for. I would like for a judge, myself and Laura Durham to get this thing straighten[ed] out once and for all. Please let me hear from you."

██  There is nothing in this letter that can possibly be construed as a claim of further disability. It is a plea for assistance from the Board to force Liberty Mutual to comply with the requirement of the stipulated settlement that it provide medical care. McReynolds did not claim a greater degree of injury and did not seek benefits beyond those required by the settlement, i.e., medical care.

In the attached medical report, Dr. Senegor indicated: "Current symptoms include back pain, bilateral buttock pain, and bilateral leg pain (right worse than left) with the pain radiating all the way down the leg occasionally. There is also some numbness and tingling occasionally. The pain is worse on the right than on the left. The patient experiences significant morning stiffness and he is completely unable to bend. He has trouble putting his socks on and getting dressed in the morning because of the stiffness which does not leave him until approximately near noon. By the end of the day, if he engages in physical activity, his low back hurts again." The report continued: "My impression of this patient is that he is experiencing bilateral lumbar radicular symptoms at the present that require attention. These symptoms have so far

failed to respond to physical therapy. These symptoms require the following treatment: possible epidural steroid injection, repeat MRI scan of the lumbar spine, and if additional conservative therapy fails, possible surgical decompression of the neural elements at the L4-5 level. This obviously would depend upon the findings of the new MRI test." Finally, Dr. Senegor opined that these symptoms stemmed from the October 1990 injury.

In *Beaida v. Workmen's Comp. App. Bd.* (1968) 263 Cal.App.2d 204 [69 Cal.Rptr. 516], the employee's doctor wrote the Board shortly before expiration of the five-year period, expressing his opinion that the prior award did not fairly cover the extent of the employee's disability. (*Id.* at p. 206.) In the letter, the doctor discussed the employee's protracted symptoms and expressed his opinion "that the State Compensation Commission's determination on this man was self serving, and did not objectively and fairly cover the extent of his disability." (*Id.* at p. 206, fn. 1.) The letter concluded: "In view of the enclosed report, does not an adjustment of Mr. Beaida's disability rating and settlement seem indicated? What do you advise in rectifying this situation?" (*Ibid.*) The Board replied to the letter, with a copy to the insurer, indicating it had not heard anything from the parties. Although the employee ultimately requested a hearing on the basis of the doctor's letter, this did not come until after the five-year period had expired. (*Id.* at p. 206.) The Board denied relief. (*Id.* at pp. 206–207.)

This court annulled the Board's order. After first noting that the Board rules declare that jurisdiction under section 5410 is to be invoked by a *petition* setting forth the facts relied on and that all requests for action by the Board other than applications and answers are considered petitions, we found the doctor's letter sufficient to invoke Board jurisdiction. We explained that the letter was "[i]ndisputably" written at the request of the employee and "claimed pain and disability for which the compensation provided by the original award now turned out to be inadequate." (*Beaida v. Workmen's Comp. App. Bd., supra,* 263 Cal.App.2d at p. 209.) We rejected the Board's contention that the letter did not allege new and further disability but only inadequacy of the original award, explaining: "Liberally construed, the letter did not request reconsideration of the original award; rather its theme was that the award fell short of the eventual disability, hence was inadequate and should be augmented. Thus it expressed 'good cause' for an increased award for increased disability . . . ." (*Id.* at p. 210.)

*Beaida* too is distinguishable. There, the doctor's letter, written at the behest of the employee, claimed further disability not covered by the original award. The insurer was notified of the request at the time of the Board's reply. Here, McReynolds's letter did not claim further disability but instead sought enforcement of the original requirement that Liberty Mutual provide

medical care. Although the report by Dr. Senegor opined that McReynolds was not responding to physical therapy and further treatment would be necessary, it did not specify that this was due to new and further disability. Nor did it specify that the original award was inadequate. In other words, the report questioned the efficacy of the treatment provided, not the extent of the disability. This is further evident by the fact that notice of the request was given only to Liberty Mutual, the party responsible for further treatment.

We recognize that "statute of limitations provisions in the Labor Code must be liberally construed in favor of the injured employee and . . . such enactments should not be interpreted in a manner which results in loss of compensation unless otherwise compelled by specific statutory language." (*Newton v. Workers' Comp. Appeals Bd., supra,* 17 Cal.App.4th at p. 154.) However, the rule of liberal construction "should not be used to defeat the overall statutory framework and fundamental rules of statutory construction." (*Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328].)

The purpose of limitations periods in the Labor Code is "to foster both certainty and finality in the law." (*Barnes v. Workers' Comp. Appeals Bd.* (2000) 23 Cal.4th 679, 686 [97 Cal.Rptr.2d 638, 2 P.3d 1180].) Here, there is nothing in the record to suggest that petitioners were aware of McReynolds's letter or Dr. Senegor's report until they were joined in the action in 1998, long after the five-year limitations period had expired. ■ If section 5410 does anything, it provides assurance to an employer or insurer that after five years following an industrial injury, they need not worry about further claims. Under the circumstances of this case, the Board cannot require petitioners to defend a claim of further disability for which they did not receive notice until eight years after the injury. Because McReynolds did not file a claim for additional disability within the five-year period, the Board acted beyond its jurisdiction in imposing further liability on petitioners.

## DISPOSITION

The order of the Board on reconsideration is annulled. The matter is remanded to the Board for further proceedings consistent with the views expressed in this opinion. Petitioners shall receive their costs of this proceeding.

Blease, Acting P. J., and Sims, J., concurred.