[No. A115635. First Dist., Div. Two, May 31, 2007.]

MIKE SARABI, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, NARSI'S HOF-BRAU
et al., Respondents.

COUNSEL

Law Offices of Sam Salmon and Sam Salmon for Petitioner.

Law Offices of Mullen & Filippi and John E. Durr for Respondents Narsi's
Hof-Brau and Farmers Insurance Company.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

**KLINE, P. J.**—Petitioner Mike Sarabi challenges an order of the Workers'
Compensation Appeals Board (Board) holding it had no jurisdiction to award
him additional temporary total disability (TTD) benefits for a period com-
mencing more than five years after the date of his injury. The Board's holding
was in error, and we therefore annul its order and remand the case for a new
order consistent with this opinion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Sarabi, a night manager at Narsi's Hof-Brau, sustained an industrial injury
to his right shoulder on August 28, 1999. In a findings and award dated
December 15, 2000, the workers' compensation judge (WCJ) awarded Sarabi
TTD benefits from August 29, 1999, through December 2, 1999, and found
further medical treatment was necessary.

Sarabi underwent right shoulder surgery on January 18, 2002, and filed a petition to reopen on November 15, 2002, alleging that "a change in [his] condition [had] result[ed] in further periods of temporary disability." On May 26, 2004, orthopedic surgeon Dr. Gary P. McCarthy stated Sarabi was temporarily disabled and needed further right shoulder surgery in order to reach a permanent and stationary status. He stated he had "repeatedly requested" that this surgery take place. Sarabi was then evaluated by an agreed medical examiner (AME), Dr. Henry L. Edington, who reported on August 17, 2004, that Sarabi had a TTD and needed right shoulder surgery. According to Narsi's answer to Sarabi's petition for a writ of review, the surgery was postponed several times because Sarabi needed to be treated for a nonindustrial condition before he could be medically cleared for surgery.

Also according to Narsi's answer, Dr. Edington issued a supplemental report on October 7, 2005, stating that *if* Sarabi could not be medically cleared for right shoulder surgery, he *could* be considered permanent and stationary as of August 17, 2005, one year to the day after Dr. Edington's initial report.[1] (Italics added.) Prior to the supplemental report, Narsi's had been voluntarily providing Sarabi with TTD benefits since December 26, 2000, but, after receiving the report, it informed Sarabi on November 14, 2005, that "[p]ayments are ending 11/03/05 because Dr. Edington has declared that you are permanent and stationary as of 08/17/05." "Benefits were paid to you as [TTD] from 12/26/2000 through 11/03/2005. Included in this amount is an overpayment totaling $3,516.45."[2]

The case returned to the WCJ for a mandatory settlement conference on December 16, 2005. The parties agreed that the issue to be decided was whether Sarabi was entitled to additional TTD benefits beginning August 17, 2005, the date Narsi's terminated its voluntary payment of TTD benefits based on Dr. Edington's supplemental report.

On June 28, 2006, the WCJ issued a findings and award granting Sarabi's request for additional TTD indemnity "from August 17, 2005 to date and continuing." The WCJ stated there was jurisdiction to issue the award even if the additional TTD arose on August 17, 2005, because Sarabi had filed a timely petition to reopen. He also noted that treatment for Sarabi's nonindus-

---

[1] The parties have not provided this court with a copy of Dr. Edington's supplemental report.

[2] It appears this "overpayment" is for payments Narsi's made to Sarabi from August 17, 2005 (the date Narsi's alleges Sarabi became permanent and stationary), and November 3, 2005 (the date Narsi's terminated payments).

trial condition was required before he could undergo surgery necessary to cure or relieve him of the effects of his industrial injury, citing to the "general rule . . . that liability to furnish medical treatment can include a duty to treat for non-industrial conditions which may be interfering with the medical treatment necessary for the treatment of the industrially caused condition."

Narsi's filed a petition for reconsideration, claiming there was no jurisdiction to award TTD benefits because Sarabi's petition to reopen was "skeletal" and because "jurisdiction was lost when the applicant was found to be permanent and stationary by the [AME]." Sarabi responded that TTD benefits should not have been terminated on August 17, 2005, and that Narsi's was estopped from objecting to the petition to reopen, having voluntarily paid TTD benefits and having never questioned his TTD status before that date. In his report and recommendation, the WCJ recommended denying Narsi's petition for reconsideration, stating that "so long as the applicant's timely [p]etitions to [r]eopen remained pending, the [Board] continued to have jurisdiction to act upon those petitions and to award the applicant benefits caused by any 'new and further disability.' " He also noted there was no authority supporting Narsi's position that the Board loses jurisdiction to award temporary disability benefits when a medical examiner considers a worker's injuries to be " 'permanent and stationary.' "[3]

The Board in a two-to-one decision granted Narsi's petition for reconsideration, holding it had no jurisdiction to award TTD benefits commencing August 17, 2005, and that Sarabi "shall take nothing on the petitions to reopen." The Board held that although an award of TTD benefits commencing August 17, 2004, may have been supported by Dr. Edington's initial report that surgery was necessary, there was no jurisdiction to award, as the WCJ did, TTD benefits beginning August 17, 2005, which was over five years after the date of injury. The dissent stated that because Dr. Edington found on August 17, 2004, that Sarabi was temporarily totally disabled and needed surgery, and there was no evidence that he stopped needing the surgery between then and August 17, 2005, there was continuing jurisdiction to award TTD benefits. Sarabi filed a timely petition for a writ of review, which this court granted.

---

[3] Narsi's does not dispute that Dr. Edington's opinion that Sarabi's condition could be considered permanent and stationary as of August 17, 2005, presupposed that he could not be medically cleared for right shoulder surgery. In fact, as Narsi's acknowledges, Sarabi was later cleared for the surgery.

## II. Discussion

### A. The Board Had Jurisdiction to Order Additional TTD Benefits Because Sarabi Filed a Timely Petition to Reopen and His New and Further Disability Commenced Within Five Years of the Date of His Injury.

#### 1. Sarabi Filed a Timely Petition to Reopen.

Under Labor Code[4] section 5410, an injured worker who has previously received workers' compensation benefits either voluntarily paid by the employer or pursuant to an award is entitled to claim benefits for "new and further disability" within five years of the date of injury. Section 5803 permits the reopening of a previously adjudicated case for "good cause" upon a petition filed by a party, also within five years from the date of injury. If a petition to reopen under either section is filed within the five-year period, the Board has jurisdiction to decide the matter beyond the five-year period. (§ 5804; *Bland v. Workers' Comp. Appeals Bd.* (1970) 3 Cal.3d 324, 329, fn. 3 [90 Cal.Rptr. 431, 475 P.2d 663]; see also *General Foundry Service v. Workers' Comp. Appeals Bd.* (1986) 42 Cal.3d 331, 337 [228 Cal.Rptr. 243, 721 P.2d 124] ["The Board clearly has the power to continue its jurisdiction beyond the five-year period when an application is made within that period"].)

Here, Sarabi filed the pertinent petition to reopen on November 15, 2002, less than five years from the date of his injury. Although Narsi's argues the Board lacked jurisdiction to award TTD benefits because the petition was "skeletal," our Supreme Court has held that very broad or general petitions are sufficient. (E.g., *Bland v. Workers' Comp. Appeals Bd., supra*, 3 Cal.3d at p. 329 [in light of the "strong policy" in favor of liberal treatment of disability claims, petition to reopen asking the Board to " 'take such steps as may be necessary to a redetermination of this matter' " is sufficient].) Indeed, an applicant has been excused from even filing a petition to reopen where the WCJ stated in a notice of hearing that the matter to be adjudicated was whether the applicant was entitled to additional benefits. (*Zurich Ins. Co. v. Workers' Comp. Appeals Bd.* (1973) 9 Cal.3d 848, 852 [109 Cal.Rptr. 211, 512 P.2d 843] [absence of petition could not have prejudiced employer and applicant could have been lulled by WCJ's notice into thinking there was no need to file petition].)

Sarabi's petition to reopen cited sections 5410 and 5803, alleged a "change in [his condition]" and requested further temporary disability benefits—the

---

[4] All further statutory references are to the Labor Code unless otherwise stated.

precise issue later adjudicated by the WCJ and the Board. Although the petition did not specify what the "change in . . . condition" was, it was sufficient to inform Narsi's of the nature of the claim and to confer jurisdiction on the Board to determine whether he had suffered a new and further disability under section 5410, or whether there was good cause to reopen the prior award under section 5803. Moreover, Narsi's can not persuasively claim it was prejudiced by the "skeletal" nature of the petition to reopen, as it was fully aware of Sarabi's condition throughout the years, making voluntary TTD payments and participating in various proceedings including having AME's examine Sarabi to evaluate his disability. Because Sarabi filed a timely petition to reopen that was still pending at the time the matter returned to the WCJ for a hearing, the Board had continuing jurisdiction to render a decision in the matter after the five-year limitations period had expired.

### 2. Sarabi Suffered a New and Further Disability Within Five Years of the Date of His Injury.

■ For an applicant to recover additional temporary disability benefits, he or she must not only have filed a petition to reopen within five years from the date of injury, but must also have suffered a "new and further disability" within that five-year period, unless there is otherwise "good cause" to reopen the prior award. (*Ruffin v. Olson Glass Co.* (1987) 52 Cal.Comp.Cases 335, 343 (*Ruffin*).)[5] An injured worker therefore cannot confer jurisdiction on the Board by filing a petition to reopen an award before the five-year period has expired for anticipated new and further disability to occur thereafter. (*Ibid.*)

" ' "[N]ew and further disability" has been defined to mean disability . . . result[ing] from some demonstrable change in an employee's condition . . .' [citation]," including a " 'gradual increase in disability.' " (*Nicky Blair's Restaurant v. Workers' Comp. Appeals Bd.* (1980) 109 Cal.App.3d 941, 955 [167 Cal.Rptr. 516].) " ' "Historically, a change in physical condition necessitating further medical treatment ha[s] been considered new and further disability . . . . [Citation.]" [Citations.] Thus, "[c]ommonly, new and further disability refers to a recurrence of temporary disability, a new need for medical treatment, or the change of a temporary disability into a permanent disability." [Citation.]' " (*Ibid.*) " 'Good cause' " includes a mistake of fact, a

_____

[5] *Ruffin* is a writ-denied case and therefore has no stare decisis effect, but both our Supreme Court in *Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 300, footnote 9 [285 Cal.Rptr. 86, 814 P.2d 1328], and the Court of Appeal in *Hartsuiker v. Workers' Comp. Appeals Bd.* (1993) 12 Cal.App.4th 209, 218, footnote 5 [15 Cal.Rptr.2d 719] quoted from it, agreeing that an award for additional benefits beyond the five-year period where the new and further disability did not arise within that period "would be nothing more than a subterfuge to avoid the limitation of jurisdiction contained in . . . [s]ections 5410 and 5804." (*Ruffin, supra,* 52 Cal.Comp.Cases at p. 343.)

mistake of law disclosed by a subsequent appellate court ruling on the same point in another case, inadvertence, newly discovered evidence, or fraud. (*Id.* at p. 956.)

■ As the Board properly noted, Dr. Edington's opinion of August 17, 2004, that Sarabi had a TTD and required right shoulder surgery may have supported a finding of TTD beginning August 17, 2004. Dr. McCarthy had also been recommending surgery for some time before that date. Although this court held in *Hartsuiker, supra,* 12 Cal.App.4th at page 213, that the Board cannot reserve jurisdiction to award additional benefits for *possible* surgery to take place after the five-year period, here, the need for surgery was clear as early as May 26, 2004, when Dr. McCarthy made his recommendation for right shoulder surgery, or at the latest by August 17, 2004, when Dr. Edington opined that Sarabi had a TTD and needed right shoulder surgery. Because Sarabi's disability worsened and further medical treatment in the form of right shoulder surgery became necessary within the five-year period, Sarabi suffered "new and further disability" within the meaning of section 5410 and the Board had jurisdiction to award him additional TTD benefits.[6]

   B.   *It Was Not Error for the WCJ to Award Benefits Commencing August 17, 2005, Because There Was No Need to Award Benefits Before That Date, As Narsi's Was Making Voluntary TTD Payments Until Then.*

The Board found the WCJ erred by awarding benefits commencing August 17, 2005, because this was more than five years after the date of Sarabi's injury. Although the Board was correct in holding that it has no jurisdiction to award benefits for a new and further disability arising more than five years from the date of injury, its conclusion that Sarabi was not entitled to additional benefits was in error.

The Board correctly held that the WCJ erred in stating there was jurisdiction to award additional benefits even if Sarabi's new and further disability arose after the five-year limitations period. However, the WCJ's conclusion that Sarabi was entitled to benefits commencing August 17, 2005, and continuing, was supported by the record, as the evidence showed that Sarabi's new and further disability arose within the five-year period, and that benefits were to begin on August 17, 2005, only because that was the date

---

[6] Although Sarabi's new and further disability did not occur until after he filed his petition to reopen, an applicant is not required "to adhere to a strict chronological sequence when filing documents." (*Martino v. Workers' Comp. Appeals Bd.* (2002) 103 Cal.App.4th 485, 490 [126 Cal.Rptr.2d 812] [applicant entitled to benefits even though incident supporting the claims made in her petition to reopen occurred after the filing of the petition].)

Narsi's terminated its voluntary payments. In fact, the Board correctly acknowledged that Dr. Edington's report of August 17, 2004, may have supported an award of additional benefits because it was within the five-year limitations period. Because nothing prior to August 17, 2005, was at issue, there was no need for Sarabi to request, or for the WCJ to award, benefits commencing at any time before that date.

■ To deny TTD benefits on the facts of this case would permit an employer, knowing that an applicant has filed a timely petition to reopen and has suffered a new and further disability within the pertinent five-year period, to make voluntary payments until after the five-year period has elapsed, so that any award for additional benefits would be jurisdictionally barred as commencing more than five years after the date of injury. This would be an unjust result and would conflict with the longstanding rule that " ' "[l]imitations provisions in workmen's compensation law must be liberally construed in favor of the employee unless otherwise compelled by the language of the statute, and such enactments should not be interpreted in a manner which will result in" a loss of compensation.' " (*Martino v. Workers' Comp. Appeals Bd.,* *supra,* 103 Cal.App.4th at p. 489, quoting *Bland v. Workers' Comp. Appeals Bd., supra,* 3 Cal.3d at pp. 330–331.)

### III. Disposition

The Board's order is hereby annulled. The case is remanded to the Board for a new order consistent with this opinion.

Haerle, J., and Lambden, J., concurred.