Juan VANEGAS, Plaintiff,

v.

BOARD OF the TRUSTEES OF the HEALTH AND WELFARE FUND FOR THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 99 AND 99A, and Group Hospitalization and Medical Services, Inc. t/a Carefirst Bluecross Blueshield, Defendants.

Civil No. JFM 07–52.

United States District Court, D. Maryland.

May 19, 2008.

James P. Koch, Law Office of James P. Koch, Baltimore, MD, for Plaintiff.

Thomas Patrick McErlean, Law Office of Thomas P. McErlean, Washington, DC, Timothy M. Hurley, Jennifer M. Schwart-

zott, Miles and Stockbridge PC, Baltimore, MD, for Defendants.

## OPINION

J. FREDERICK MOTZ, District Judge.

On January 9, 2007, plaintiff Juan Vanegas brought suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, challenging the denial of medical benefits by defendants Board of Trustees of the Health and Welfare Fund for the International Union of Operating Engineers Local 99 and 99A (the "Fund") and Group Hospitalization and Medical Services, Inc. t/a CareFirst BlueCross BlueShield ("CareFirst").[1] On November 20, 2007, I granted the Fund's motion for summary judgment, finding that the Fund had not abused its discretion in denying plaintiff's claims. *See Vanegas v. Bd. of Trs. of Health & Welfare Fund,* No. 07–CV–52, 2007 WL 4180548, at *4–10 (D.Md. Nov. 20, 2007). I denied CareFirst's motion for summary judgment because it was unclear from the record whether the CareFirst group benefit plan at issue, the Blue Ridge Plan, contained an exclusion justifying its denial of coverage. *See id.* at *10–12. A further factual record has now been established, and both parties have renewed their summary judgment motions. For the reasons that follow, I will grant plaintiff's motion and deny CareFirst's motion.

## I.

A motion for summary judgment should be granted when the record establishes that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[2] Fed.

---

1. Under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

2. Because I presented the undisputed facts of this case in my previous memorandum opinion, *Vanegas,* 2007 WL 4180548 at * 1–3, I will not recite them here.

R.Civ.P. 56(c). The substantive law of the cause of action determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505.

■ CareFirst's Blue Ridge Plan is governed by ERISA. *See* 29 U.S.C. § 1003. In reviewing a plan administrator's decision to deny benefits, a court must first determine whether the plan gives the administrator discretionary authority to construe uncertain terms and determine eligibility for benefits. *Booth v. Wal–Mart Stores, Inc.*, 201 F.3d 335, 340–41 (4th Cir.2000); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan does not grant discretionary authority, the court reviews the employee's claim *de novo* as it would any other contract claim—by looking to the terms of the plan and other manifestations of the parties' intent. *Booth*, 201 F.3d at 341. If, on the other hand, the plan by its terms confers discretion on the administrator, the court reviews the administrator's decision for abuse of discretion. *See generally Booth*, 201 F.3d at 341–43.

In the instant case, plaintiff contends that the Blue Ridge Plan "does not appear to confer discretion on CareFirst to construe the terms of the plan." (Pl.'s Mem. at 3.) In its summary judgment motion prior to my November 20, 2007 opinion, CareFirst asserted that the Blue Ridge Plan grants its administrator discretionary authority. (CareFirst's Cross–Mot. for

Summ. J. at 3.) However, it has not provided any language from the Plan supporting this assertion, nor has it addressed the issue in its most recent briefs. (*See generally* CareFirst's Mem.; CareFirst's Reply.) In any event, because I conclude that CareFirst's decision to deny coverage to plaintiff was unsupported by the language of the Blue Ridge Plan, I will assume, without deciding, that the Plan grants its administrator discretionary authority.

## II.

■ CareFirst argues that its decision to rescind all payments to plaintiff's health care providers for medical treatment and services between 2004 and 2006 was required by the Blue Ridge Plan's "work-related injury exclusion," Exclusion 10.10(h). (CareFirst's Mem. at 2–3.) That exclusion precludes benefits for "[s]ervices or supplies for injuries or diseases related to a covered person's job to the extent the covered person is required to be covered by a workers' compensation law." (*Id.* Ex. B at A–27.) CareFirst contends that (1) the injuries for which plaintiff received medical treatment between 2004 and 2006 were "directly related" to plaintiff's employment at a manufacturing company in Los Angeles, California in 1986 (*id.* at 5), and (2) plaintiff was required to be covered by California workers' compensation law at the time of his 1986 injury, (*id.* at 6.) Therefore, according to CareFirst, "Exclusion 10.10(h) precludes coverage for the benefits that Plaintiff now seeks." (*Id.* at 8.)

I agree with the first prong of CareFirst's argument: that CareFirst reasonably determined that plaintiff's eyelid and nose problems, which required a series of reconstructive surgeries between 2004 and 2006, were "related to" plaintiff's 1986 employment, where plaintiff sustained his original face injury. Indeed, I reached an

analogous conclusion in my earlier opinion when I ruled that the Fund's Board of Trustees did not abuse its discretion in finding that the medical services and treatment plaintiff received between 2004 and 2006 were "in connection with injuries sustained" during his 1986 employment. *Vanegas,* 2007 WL 4180548 at *4. Plaintiff himself conceded as much in his complaint, stating that "[s]ince 2004, Plaintiff has needed and continues to need medical and surgical treatment to correct problems associated with the deterioration of the skin grafts on his face." (Compl.¶ 8.) Furthermore, a 2005 report from one of plaintiff's treating physicians confirms the connection between the medical treatment and plaintiff's 1986 manufacturing job: "This Hispanic male presents for continued reconstruction and revision of scarred and keloid facial structures status post [1986] burn injury from molten plastic." (CareFirst's Mem. Ex. D at 1.)

It is the second prong of CareFirst's argument I find to be fallacious: that plaintiff was "required to be covered by a workers' compensation law" for the medical services and treatment he received between 2004 and 2006. It is true that as a general matter California law provides that all employers are liable for the compensation "for any injury sustained by his or her relevant employees arising out of and in the course of the employment." Cal. Lab.Code § 3600(a) (1986). However, as the following analysis demonstrates, that is not so as to a "new and further disability" arising from a work related injury that first manifests itself more than five years after the original injury.

California law provides that an applicant for workers' compensation must institute proceedings within one year after the date of the injury unless there has been a voluntary payment of benefits. Cal. Lab. Code §§ 5404, 5405. Such voluntary payments will toll the statute of limitations so long as they continue, but the period begins to run again upon the stoppage of such payments. *Id.* In the instant case, it is undisputed that plaintiff's 1986 employer voluntarily paid plaintiff's medical expenses immediately after the injury in 1986. (CareFirst's Mem. at 8; Vanegas Dep. at 20–21.) Accordingly, the one year statute of limitations, which had been tolled during the time that plaintiff's employer paid his expenses, commenced when plaintiff's employer stopped making payments (presumably sometime in 1986) and expired in 1987. CareFirst argues that plaintiff thus "received the benefits under the California Statute to which he was entitled," and that it "cannot be obligated to cover excluded benefits simply because the insured elects not to pursue the remedy permitted by law." (CareFirst's Mem. at 8.)

If plaintiff were seeking coverage for treatment of his *original injury,* CareFirst's argument would be meritorious. However, the coverage at issue here is for treatment of eyelid and nose problems that arose in 2004. California law specifically contemplates the development of a "new and further disability." Cal. Lab.Code § 5410. The California Labor Code provides that if the original injury causes a "new and further disability" to arise within five years after the original injury, the employee may institute proceedings within those five years to obtain compensation for treatment of the "new and further disability." *Id.* There can be no doubt that plaintiff's eyelid and nose problems, for which he received treatment between 2004 and 2006, were a "new and further disability" within the meaning of section 5410.[3] *See*

---

**3.** CareFirst requests that if I find plaintiff's recent medical problems to be a "new and further disability" that I "revisit and revise"

my November 20, 2007 ruling that the Fund did not abuse its discretion in denying plaintiff coverage. (CareFirst's Reply at 3.) The

*Sarabi v. Workers' Comp. Appeals Bd.,* 151 Cal.App.4th 920, 60 Cal.Rptr.3d 189, 194 (2007) ("Historically, a change in physical condition necessitating further medical treatment has been considered a new and further disability.") ("Because Sarabi's disability worsened and further medical treatment in the form of right shoulder surgery became necessary within the five-year period, Sarabi suffered 'new and further disability' within the meaning of section 5410....."). However, because these problems did not manifest themselves until 2004—long past the five year limitations period established by California law—plaintiff could not seek to recover payments for treatment of them from his 1986 employer, even if it were still in business.

Otherwise stated, if plaintiff's new disability had arisen and been treated within five years after his original injury—i.e. by 1991—and plaintiff were seeking coverage for that treatment, the Blue Ridge Plan's Exclusion 10.10(h) would preclude coverage. Plaintiff would have been "required to be covered by a workers' compensation law" during that period, and would alone have been at fault for allowing the statute of limitations to expire. However, plaintiff's new disability did not arise until 2004. Accordingly, because neither the one year statute of limitations under section 5405 nor the five year statute of limitations under section 5410 applies, plaintiff was not "required to be covered by a workers' compensation law" between 2004 and 2006.

Furthermore, the purpose behind the Blue Ridge Plan's Exclusion 10.10(h) does not support denying coverage in the instant case. Exclusion 10.10(h) precludes coverage in three instances in which "double recovery" is a concern: (1) "Services to the extent they are covered by any governmental unit....."; (2) "Services or supplies

for injuries or diseases related to a covered person's job to the extent the covered person is required to be covered by a workers' compensation law"; and (3) "Services or supplies resulting from accidental bodily injuries arising out of a motor vehicle accident to the extent the services are payable under a medical expense payment provision of an automobile insurance policy." (CareFirst's Mem. Ex. B at A–27.) In the instant case, plaintiff has not been covered for the medical expenses he incurred between 2004 and 2006, and thus there is no danger that he will receive "double recovery."

· For the foregoing reasons, I grant plaintiff's motion for summary judgment and deny CareFirst's motion for summary judgment. A separate order to that effect is being entered herewith.

### ORDER

For the reasons stated in the accompanying Opinion and in the Opinion issued on November 20, 2007, it is, this 19th day of May 2008

ORDERED

1. The rulings made in the order entered by this court on November 20, 2007 are incorporated by reference herein;

2. The motion for summary judgment filed by plaintiff as to his claim against Group Hospitalization and Medical Services, Inc. T/A Carefirst BlueCross BlueShield ("CareFirst") is granted;

3. The motion for summary judgment filed by CareFirst is denied;

4. Judgment is entered in favor of the Board of the Trustees of the Health and Welfare Fund for the International Union

---

request is illogical. The fact that plaintiff suffered a "new and further disability" related to his 1986 injury does not mean that the medical services and treatment of the disability were not "in connection with injuries sustained" in the 1986 accident.

of Operating Engineers, Local 99 and 99A against plaintiff; and

5. Judgment is entered in favor of plaintiff against CareFirst.